## UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF MICHIGAN

AVKO EDUCATIONAL RESEARCH
FOUNDATION, a Michigan
Corporation, and DONALD J.
MCCABE, author,

       Plaintiffs,

          v.                            Case No.:

THOMAS L. MORROW, an individual,
WAVE 3 LEARNING, INC.; HOME
SCHOOL HOLDINGS, INC., and HOME
SCHOOL, INC;

       Defendants.

_____/

| | |
|---|---|
| SUSAN PAYNE WOODROW (P29844) | MARK G. CLARK (P41652) |
| PO Box 300833 | JOHN DI GIACOMO (P73056) |
| Drayton Plains, MI  48300 | TRAVERSE LEGAL, PLC |
| *Attorney for Plaintiff* | *Attorneys for Defendant* |
| (248) 760-1818 | 810 Cottageview Drive, Unit G-20 |
| enddebt@live.com | Traverse City, MI 49684 |
| | (231) 932-0411 |
| | mark@traverselegal.com |
| | john@traverselegal.com |

_____/

## <u>NOTICE OF REMOVAL</u>

PLEASE TAKE NOTICE, that Defendants, Thomas L. Morrow and Wave 3

Learning, Inc., by and through their attorneys, Traverse Legal, PLC, hereby remove this

action pursuant to 28 U.S.C. § 1441(a) from the Circuit Court for the County of Saginaw,

Michigan (case no: 11013532-CK) to the United States District Court for the Eastern

District of Michigan.  A copy of all process and pleadings that have been served upon

Defendants, Thomas L. Morrow and Wave 3 Learning, Inc., is attached to this Notice as

**EXHIBIT A.**

Defendants remove this case on the following grounds:

1.      This is a civil action over which this Court has original jurisdiction under 28

U.S.C. § 1338 (a) because this case concerns claims of copyright infringement under

the copyright laws of the United States.

2.      The state law claims set forth in Plaintiff's Complaint are removable

pursuant to 28 U.S.C § 1441 (c).

3.      Venue is proper in Eastern District of Michigan pursuant to 28 U.S.C §

1391 (b).

4.      This Notice of Removal is timely filed pursuant to 28 U.S.C. §1441 (b)

because it was filed within 30 days of the service of the summons upon Defendants

Thomas Morrow and Wave 3 Learning, Inc.

5.      Pursuant to the Michigan Court Rules, Defendants' response to the

Complaint is due on August 22, 2011.

6.      Pursuant to 28 U.S.C § 1441(d), Defendants have given written notice to

all adverse parties and have filed a copy of this notice with the clerk of the Court for the

County of Saginaw.

Respectfully submitted this 3rd day of August, 2011.

TRAVERSE LEGAL, PLC
Attorneys for Defendants Thomas
Morrow and Wave 3 Learning, Inc.


/s/ John Di Giacomo
By:  John Di Giacomo (P73056)
810 Cottageview Drive, Unit G-20
Traverse City, MI 49684
(231) 932-0411
john@traverselegal.com

3

### CERTIFICATE OF SERVICE

Documents:

- 8/3/2011 *Notice of Removal* together with *Certificate of Service*

I hereby certify that on August 3, 2011 the referenced document was electronically

filed with the court and served upon:

SUSAN PAYNE WOODROW
PO Box 300833
Drayton Plains, MI  48300
*Attorney for Plaintiff*
enddebt@live.com

via email.

/s/ John Di Giacomo
TRAVERSE LEGAL, PLC
John Di Giacomo (P73056)
810 Cottageview Drive
Unit G-20
Traverse City, MI  49684

4

# EXHIBIT

# A

## STATE OF MICHIGAN
## IN THE CIRCUIT FOR THE COUNTY OF GENESEE

AVKO Educational Research Foundation,
Donald J McCabe, author,
    Plaintiffs,

v

Thomas L. Morrow; Wave 3 Learning, Inc; Home
School Holdings, Inc; Home School, Inc;
    Defendants.

CASE No:

HON:

EX PARTE PETITION FOR
INJUNCTIVE RELIEF AND
TEMPORARY RESTRAINING
ORDER AGAINST ALL
DEFENDANTS HEREIN.

    COMES NOW the Plaintiffs, (hereinafter, "Plaintiffs") with an *ex parte* request for injunctive relief and temporary restraining orders against Defendants for acts surrounding a copyright violation, breach of contract,  All allegations and breaches of the law are contained within a Complaint currently pending in the Michigan Circuit Court, County of Saginaw, Case No._____.

### QUESTION PRESENTED

Are Plaintiffs entitled to an injunction preventing Defendants from violating their copyright during the pendency of the case?

 The Answer must be YES!

### BRIEF STATEMENT OF FACTS

    Donald J. McCabe is the author of a compilation of 720 related educational books called "The Works".  These books represent his life's work and his legacy.  The series teaches people how to read and enhances literacy especially for those who are faced with dyslexia and similar disabilities that

---

1   Mellentine v Ameriquest, CITI, Chase, WM, JP, MERS, Orlans & Unknown

interfere with learning to read under the traditional school system. He created a foundation to advertise, publish, sell, and distribute the books. Because he is dyslexic himself, insuring that the system is made available to anyone, without regards to their means, is important. In that regard, early in this venture, Mr. McCabe creat the AVKO Educational Research Foundation, Inc., a non-profit organization that handles the business aspects along with providing individualized reading tutoring (through Mr. McCabe) for indigents. Despite the free training, the foundation grossed $270,000 in 2009. Because Mr. McCabe is in his mid-eighties, he needed to scale down his activities and decided that he would form a relationship with an entity who could handle the publishing, selling, and distribution of his materials. He formed a contract with Mr. Thomas Morrow, who represented that he was the President and CEO of Home School Holdings, Inc. During the negotiations, Mr. Morrow represented that he would give AVKO a down payment of $50,000 cash, take over the duties and shortly later give AVKO $250,000 stock in HSH, and, a share in the profits later.

Mr Morrow, CEO and Chairman of HSH did not reveal that from 10/17/2009 through 12/31/2009, HSH had

- an earnings record of net losses, of $5,770,205
- had income from stock sales, loans and other financing activities of $2,198,523
- had gross revenue of $153,780
- paid Mr. Morrow $371,000
- given Mr. Morrow 1,436,145 shares of stock,

- only 958 "Cash on hand" was $958.

Within 2 weeks of signing the contract, Mr. Morrow resigned from HSH as did most of the current officers and directors.  This, too, was concealed.

AVKO & MrMcCabe were concerned that the teaching system created would survive and it's charitable goals be met in perpetuity.

Shortly thereafter, Morrow they deregistered the stock thus further frustrating the final payment; but, the stock was worthless.  Within a few months, Morrow asked that AVKO and McCabe turn over all the copyrights to a strange company, Wave 3 Learning, Inc.

Morrow is president of this new company, Wave 3 Learning, Inc (W3L) as he was another company, Home School, Inc.

After Mr.McCabe denied selling the copyrights, W3L began to publish "the Works" as copyrights in 3 manners: by AVKO, by W3L and AVKO, and solely by W3L.

This suit is to stop the significant copyright infringement that began within about 6 months of the partial payment for only the right to publish, sell and distribute "The Works".  "The Works" is a compilation of 720 books which was estimates to be worth about $992,500 when the copyrights were filed on November 9, 1975.  It is absurd that he would sell these rights for $50,000! And give up future income. *See exhibit N*

1. **Granting an injunction prohibiting Defendant from marketing the books under their copyright is proper, equitable and consistent with public policy.**

The standard for granting a preliminary injunction is fourfold.  It is "an extraordinary remedy which is never awarded as of right".  *Overstreet V. Lexington – Fayette urban County Government,* 300 5F3D 566, 573 (6th Cir. 2002). To obtain a preliminary injunction, one must prove the following: plaintiff's likelihood to succeed on the merits, plaintiff is likely to suffer irreparable harm without the injunction, the injunction would not cause substantial harm to others, and the injunction is in the public interest

**a)     Likelihood to succeed on the merits**

The brief history set forth above only alludes to the significant misconduct of these defendants. The complaint sets forth specific facts of fraud and numerous Intentional instances of misconduct.  Merely the failure to disclose that the company that was supposed to pay Plaintiffs Had such significant net losses is mindboggling.  The copyright infringement is straightforward.  The copyrights were never sold.  The Defendant had admitted that when he sent the requested assignment.

**b)     Are Mr. McCabe and AVKO likely to suffer irreparable harm without the injunction?**

For Mr McCabe to lose his life work and his legacy to those with reading problems is an event that would resonate through his heart for the remainder of his life.  Especially when it happened through an apparent scam.   This kind of emotional damage is irreparable. .

**c)     Granting this injunction would not cause substantial harm to the Defendants**

Defendants should not be allowed to profit from their ongoing theft of the creation and literary works of Mr McCabe and AVKO.

**d)     Granting the injunction is in the public interest**

4   Mellentine v Ameriquest, CITI, Chase, WM, JP, MERS, Orlans & Unknown

It is in the public interest to let it be known that one cannot steal ideas without sanctions.

**WHEREFORE,** Because Plaintiffs have good reason to believe that litigation is necessary to sort out the issues, Plaintiffs pray that the court will:

1. Temporarily restrain Defendants from publishing, selling, distributing, or otherwise disbursing copies of books with the false copyright..

2. Any other and further relief that the Court considers just and proper.

Respectfully Submitted,

July  28, 2011

Susan Payne Woodrow, P29844
Law Offices of Susan Payne Woodrow
Attorney of Plaintiffs
PO Box 300833
Drayton Plains, MI 48300
PH: 248 623 1818
FX: 248 623 1811
E-M: enddebt@live.com

Registrar of Copyrights:

Enclosed please find:

____ TRANSFER AND ASSIGNMENT OF STATUTORY COPYRIGHTS TO:

        ____AVKO SEQUENTIAL SPELLING TESTS--SERIES ONE (611728)

        ____AVKO TYPING TUTORING MANUAL (623254)

        ____AVKO WORD FAMILIES (611642)

        ____AVKO WORD FAMILIES--A TEACHER'S MANUAL (611741)

             AND $6.00 CHECKS
____APPLICATIONS FOR REGISTRATION OF A CLAIM TO COPYRIGHT FOR:
      ____AVKO SEQUENTIAL SPELLING TESTS--SERIES ONE
      ____AVKO SEQUENTIAL SPELLING TESTS--SERIES TWO
      ____AVKO SEQUENTIAL SPELLING TESTS--SERIES THREE
      ____AVKO SEQUENTIAL SPELLING TESTS--SERIES FOUR
      ____AVKO SEQUENTIAL SPELLING TESTS--SERIES FIVE

      ____INDIVIDUALLY GUIDED TYPING
      ____READING VIA TYPING
      ____Tabulating-TUTORING-Class Choral Reading and SPELLING by
           WORD FAMILIES in Sentences (On Cover: WORD FAMILIES IN
           SENTENCE CONTEXT)

      ____AVKO STUDENT RECORD BOOK   (A completely new work never before
                        registered)

      ____AVKO WORD FAMILIES

      ____AVKO WORD FAMILIES--A TEACHER'S MANUAL

____ TWO COPIES OF:
      ____AVKO SEQUENTIAL SPEELING TESTS--SERIES ONE
      ____AVKO SEQUENTIAL SPELLING TESTS--SERIES TWO
      ____AVKO SEQUENTIAL SPELLING TESTS--SERIES THREE
      ____AVKO SEQUENTIAL SPELLING TESTS--SERIES FOUR
      ____AVKO SEQUENTIAL SPELLING TESTS--SERIES FIVE
      ____INDIVIDUALLY GUIDED TYPING
      ____READING VIA TYPING
      ____Tab.-Tutor.-Class Chor. Read. and Spell. by Word...(WORD FAM IN SEN..
      ____AVKO STUDENT RECORD BOOK
      ____AVKO WORD FAMILIES
      ____AVKO WORD FAMILIES--A TEACHER'S MANUAL

AVKO v MORROW EX N P1/4

TRANSFER AND ASSIGNMENT OF STATUTORY COPYRIGHT

Let it be known to all concerned that I, Donald J. McCabe of 3084 W. Willard Road, Birch Run, Michigan do hereby convey to the AVKO Educational Research Foundation, Inc. located at 3084 W. Willard Road, Birch Run, Michigan the copyrights to:

AVKO WORD FAMILIES

by

Donald J. McCabe

© 1974 Donald J. McCabe Class A Registration No. 611642

Date: November 9, 1975 _____

Donald J. McCabe

Witnessed by:

_____          _____


TRANSFER AND ASSIGNMENT OF STATUTORY COPYRIGHT

Let it be known to all concerned that I, Donald J. McCabe of 3084 W. Willard Road, Birch Run, Michigan do hereby convey to the AVKO Educational Research Foundation, Inc. located at 3084 W. Willard Road, Birch Run, Michigan the copyrights to:

AVKO WORD FAMILIES
A TEACHER'S MANUAL

by

Donald J. McCabe

© 1974 Donald J. McCabe Class A Registration No. 611741

Date: November 9, 1975 _____

Donald J. McCabe

Witnessed by:

_____          _____

AVKO v MORROW EX N P2/4

DO YOU BELIEVE THAT THERE IS A NEED FOR READING RESEARCH CENTER that would: "...receive and administer gifts, grants, donations and bequests to foster research into the causes of reading disabilities; to foster research and experimentation in remediation of reading, spelling, and writing disabilities; to provide a reading-spelling center where children and adults with educational deficiencies can receive diagnostic attention and remediation; to publish and disseminate findings concerning the aforementioned research, experimentation, diagnosis and remediation; to advise interested parties in techniques of classroom teaching, diagnosis and remediation; to do all those things and to provide all those services which are ultimately in the best interests of helping students and teachers and individuals within and outside of school systems to achieve their maximum potential." ?   There is no such agency in this area at the present time and a center such as AVKO proposes would fill a very definite void in available resources for the training of both students and teachers.

DO YOU BELIEVE THAT THE AVKO EDUCATIONAL RESEARCH FOUNDATION, INC., HAS AS ITS GOAL THE CREATION OF SUCH A READING RESEARCH CENTER?   Yes.

DO YOU BELIEVE THAT THE AVKO EDUCATIONAL RESEARCH FOUNDATION, INC., WILL BE ABLE TO GENERATE SUFFICIENT ENTHUSIASM AND COOPERATION FROM THE SCHOOLS AND THE COMMUNITY (IF RECOGNIZED AS A TAX-EXEMPT ORGANIZATION) THAT THE READING RESEARCH CENTER CAN BECOME A REALITY WITHIN FIVE TO TEN YEARS?   Yes. It is doubtful if such enthusiasm could be generated if it were not able to operate as a tax exempt or public service agency.

OTHER COMMENTS CONCERNING EITHER THE AVKO FOUNDATION OR ITS MATERIALS OR ITS MEMBERS THAT MAY BE PERTINENT:
    The materials appear to be very suitable for use in individualized instruction or small group instruction of either normal or disabled students.

James T. Rutledge,
Secondary Reading Consultant

AVKO v MORROW EX N P3/4

2. If you wanted to duplicate the AVKO materials without infringing upon the copyrights, how big a staff would you need to create from scratch the AVKO materials and how much money would you expect to pay in salaries for the creation of:

|  | Your estimated Cost to include salaries, materials, and equipment | Your estimated commercial sales price for copyrights |
|---|---|---|
| a. AVKO WORD FAMILIES | 35,000.00 | 150,000.00 |
| b. WORD FAMILIES IN SENTENCE CONTEXT | 28,000.00 | 120,000.00 |
| c. READING VIA TYPING | 35,000.00 | 150,000.00 |
| d. Student Record Book for Reading Via Typing | 500.00 | 2,500.00 |
| e. INDIVIDUALLY GUIDED TYPING | 35,000.00 | 150,000.00 |
| f. Student Record Book for Individually Guided Typing | 500.00 | 2,500.00 |
| g. AVKO Teacher's Manual | 35,000.00 | 200,000.00 |
| h. SEQUENTIAL SPELLING I | 10,000.00 | 20,000.00 |
| i. SEQUENTIAL SPELLING II | 10,000.00 | 20,000.00 |
| j. SEQUENTIAL SPELLING III | 12,000.00 | 20,000.00 |
| k. SEQUENTIAL SPELLING IV | 15,000.00 | 20,000.00 |
| l. SEQUENTIAL SPELLING V | 15,000.00 | 20,000.00 |
| m. LEVEL CHECK TESTS | 3,500.00 |  |
| n. Student Record Book for Level Check Tests | 500.00 | 2,500.00 |
| o. SPOKEN DIALECT TRANSLATION EXERCISES | 25,000.00 | 80,000.00 |
| p. Student Record Book for Spoken Dialect Translation Exercises | 1,000.00 | 2,500.00 |
| q. AVKO STUDENT RECORD BOOK |  |  |
| r. SIGHT WORDS FOR SECONDARY STUDENTS | 10,000.00 | 20,000.00 |
| s. SEQUENTIAL SPELLING TESTS | 500.00 | 2,500.00 |

*Total Cost to produce one photo-ready copy of all the above materials ........ $271,500.00

Total est. sales value of copyrights ...... $992,500.00

* This cost figure is an estimate of the total salary figures, pilot projects, materials duplication, travel, and all other expenses necessary to produce the materials, including expenses necessary for support services such as secretaries, script writers, interrogators, data processors, etc.

I would not attempt this project without a commitment from at least ten school districts, to do field testing. This would include teacher time for inservice in materials use and should be done over a period of at least two years, including pretest - posttest operations.

AVKO v MORROW EX N P4/4

Filename:        07-28-11 AVKO Petition for Injunctive Relief and TRO
Directory:       Z:\Client Files\Wave 3 Learning, Inc (Morrow,
    Thomas)\AVKO Copyright Lawsuit\Pleadings\Adobe Docs
Template:        C:\Documents and Settings\Al\Application
    Data\Microsoft\Templates\Normal.dotm
Title:
Subject:
Author:          Cathy
Keywords:
Comments:
Creation Date:   8/1/2011 4:10:00 PM
Change Number:   1
Last Saved On:   8/1/2011 4:12:00 PM
Last Saved By:   Cathy
Total Editing Time: 2 Minutes
Last Printed On: 8/1/2011 4:15:00 PM
As of Last Complete Printing
    Number of Pages:      12
    Number of Words:      128 (approx.)
    Number of Characters: 731 (approx.)

Approved, SCAO

| Original - Court | 1st copy - Defendant | 2nd copy - Plaintiff |
| --- | --- | --- |
| | | 3rd copy - Return |

STATE OF MICHIGAN

10th JUDICIAL DISTRICT
JUDICIAL CIRCUIT
COUNTY PROBATE

**SUMMONS AND COMPLAINT**

CASE NO.
11-013532 CK

Court address: 111 So MICHIGAN AVE; SAGINAW, MI 48602

Court telephone no.

Plaintiff's name(s), address(es), and telephone no(s).
AWKS Educational (Research
Foundation and Donald J McCabe
308 E WILLARD Road
BIRCH RUN, MICHIGAN 48415
810 686 9283

Plaintiff's attorney, bar no., address, and telephone no.
SUSAN PAYNE WOODROW P72844
3631 DOROTHY LANE
WATERFORD MI 48329
248 623 1818

v

Defendant's name(s), address(es), and telephone no(s).
THOMAS MORROW
WAVE 3 LEARNING, INC
126 EAST WING STREET
SUITE 240,
ARLINGTON HEIGHTS, IL 60004
888-928-3576

---

**SUMMONS** **NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state). (MCR 2.111[C])
3. If you do not answer or take other action in the time allowed, judgment may be entered against you for the relief demanded in the complaint.

| Issued JUL 2 9 2011 | This summons expires OCT 2 9 2011 | Court clerk Susan K Attenbrech |

*This summons is invalid unless served on or before its expiration date.
This document must be sealed by the seal of the court.

---

**COMPLAINT** Instruction: The following is information that is required to be in the caption of every complaint and is to be completed by the plaintiff. Actual allegations and the claim for relief must be stated on additional complaint pages and attached to this form.

**Family Division Cases**
☑ There is no other pending or resolved action within the jurisdiction of the family division of circuit court involving the family or family members of the parties.
☐ An action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties has been previously filed in _____ Court.
The action ☐ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |

**General Civil Cases**
☑ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.
☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in _____ Court.
The action ☐ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |

---

**VENUE**

Plaintiff(s) residence (include city, township, or village)
BIRCH RUN

Defendant(s) residence (include city, township, or village)
ARLINGTON HEIGHTS, IL

Place where action arose or business conducted

Date 7/29/2011

Signature of attorney/plaintiff

If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

MC 01 (3/08) **SUMMONS AND COMPLAINT** MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a), (b), MCR 3

SUMMONS AND COMPLAINT

| PROOF OF SERVICE | Case No. |
|---|---|

**TO PROCESS SERVER:** You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

## CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE

| ☐ **OFFICER CERTIFICATE** | **OR** | ☐ **AFFIDAVIT OF PROCESS SERVER** |
|---|---|---|
| I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104[A][2]), and that:   (notarization not required) | | Being first duly sworn, I state that I am a legally competent adult who is not a party or an officer of a corporate party, and that:   (notarization required) |

☐ I served personally a copy of the summons and complaint,
☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint,
together with _____
_____ List all documents served with the Summons and Complaint

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |
| | | |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |

I declare that the statements above are true to the best of my information, knowledge, and belief.

| Service fee $ | Miles traveled | Mileage fee $ | Total fee $ |
|---|---|---|---|

Signature _____

Name (type or print) _____

Title _____

Subscribed and sworn to before me on _____ , _____ County, Michigan.
                                                Date

My commission expires: _____ Signature: _____
                              Date                        Deputy court clerk/Notary public

Notary public, State of Michigan, County of _____

## ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of the summons and complaint, together with _____
                                                                                        Attachments

_____ on _____
                                    Day, date, time

_____ on behalf of _____ .

# STATE OF MICHIGAN

## IN THE CIRCUIT COURT FOR THE COUNTY OF SAGINAW

AVKO Educational Research
Foundation, Donald J McCabe, author,

               Plaintiffs,

v

Thomas L. Morrow; Wave 3 Learning,
Inc; Home School Holdings, Inc; Home
School, Inc;

               Defendants.

CASE NO: 11-013532-CK-3

HON:     JANET M. BOES
          (P37714)

**COMPLAINT**



Susan Payne Woodrow P29844
Attorneys for Plaintiffs
Sigurd Hepler P70383
Susan Payne Woodrow JD, PC
PO Box 300833
Drayton Plains, MI 4830
PH: (248) 623-1818
FX: (248) 623-1811
suzywoodrow@hotmail.com
heplerlaw@comcast.net

COUNT 1    **COPYRIGHT INFRINGMENT**

COUNT 2    **BREACH OF CONTRACT**

COUNT 3    **FRAUD AND MISREPRESENTATION IN THE INDUCEMENT**

COUNT 4    **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

COUNT 5    **INJUNCTION**

## COMPLAINT

There is no other pending or unresolved civil action arising out of the transactions and occurrences alleged in the complaint.

NOW COME the Plaintiff, AVKO Educational Research Foundation, Inc. and Donald McCabe, author, by and through their attorneys, Susan Payne Woodrow JD, PC and for its Complaint states as follows:

## JURISDICTION

1. AVKO and Mr. McCabe are residents of Saginaw County.

2. The contract was made in Saginaw County.

3. The parties contractually agreed to litigate in Saginaw County Court and apply Michigan Law. See, Exhibit B 6. a)

4. Defendants' conduct has established enough contacts for long arm jurisdiction to lie.

5. That the amount in controversy is in excess of $25,000.00 and otherwise within the jurisdiction of this Court

## PARTIES

6. Plaintiff, Donald J. McCabe lives at 3084 Willard Road, Birch Run, Saginaw County, Michigan, 48415-9404.

7. Plaintiff, AVKO Educational Research Foundation, (AVKO) is a Michigan non-profit corporation, authorized and doing business in the County of Saginaw, State

of Michigan with an address at 3084 Willard Road, Birch Run, Saginaw County, Michigan, 48415-9404.

8. It is believed that Thomas L. Morrow resides at 2700 South River Road, Suite 106, Des Plaines, IL 60018.

   a.  Thomas L. Morrow is or was Chairman and CEO of Home School Holdings, Inc. See, Exhibit F.

   b.  Thomas L Morrow is or was President of Wave 3 Learning, Inc. See, Exhibit G.

   c.  Thomas L. Morrow is or was an officer of Home School, Inc. See, Exhibit H.

9. Home School Holdings, Inc.(HSH) is a Florida Corporation with address at 2700 South River Road, Suite 106, Des Plaines, IL 60018.

10. Mr. McCabe and Avko are real parties in interest and have a pecuniary interest in the outcome.

11. Wave 3 Learning, Inc, is incorporated under the laws of Nevada, with their primary offices at 126 East Wing Street, Suite 240, Arlington Heights IL 60004.

12. Home School Inc, is a corporation with address at 2700 South River Road, Suite 106, Des Plaines, IL 6001.


## STATEMENT OF CASE

13. Mr. McCabe is the Author of Sequential Spelling © and a compilation of derivative manuscripts called "The Works".

14. Mr. McCAbe owned the copyrights to Sequential Spelling © and the derivative works, "The Works"© since 1975. Hereinafter, "The Works" refers to all of the literary works authored by Mr. McCabe for his reading program and numbers approximately 720 books in the of the curricula and instructional aid publications (both paper copy and electronic copy) that include, by example, are teaching aids, books, teachers manuals, testing books, workbooks, reading aids, writing aids, spelling aids, grammar aids and the like. See Exhibit A, "The Works"©

15. Mr. McCabe created and founded AVKO, a non-profit entity whose primary intent was to provide low coast training for reading including assistance for dyslexic and other reading impaired individuals.

16. Mr. McCabe transferred his copyrights to AVKO in the late 1970's.

17. AVKO published and sold "The Works" educational program and books to provide the highest quality language arts curricula for students

18. Mr. McCabe is the director of AVKO and elderly. On behalf of AVKO, Mr McCabe had established a market share resulting approximately $290,000 gross revenue annually and was in the process of expanding. In order to alleviate the burdens of the business of publishing, selling and distributing The Works, he sought a relationship with an entity that would market, publish, sell, and distribute the works and hopefully share proceeds with AVKO. Thus, the curricula would continue as his legacy for the benefit of those who need help reading, generate some income, and he would be free of all the detail work having to do with running a non-profit organization.

19. As of March 31, 2010 HSH claimed net losses of nearly $300,000; but, failed to disclose this material fact before entering into the contract with AVKO.

20. On May 17, 2010 HSH announced that they could not file their 10-Q with the SEC; See, Exhibit E, but failed to disclose those material facts to Mr. McCabe or AVKO.

21. Mr. Morrow and Mr. McCabe reached an agreement after multiple e-mails discussing the terms. The relevant elements of the June 4, 2010 contract, "Publishing Rights Agreement Between Home School Holdings, Inc. and AVKO Educational Research Foundation, Inc." (Contract) are as follows:

   a. The Contract was signed on June 4, 2010 by Donald J. McCabe for AVKO and by Thomas L Morrow for HSH, and witnessed by Gloria J Goldsmith, See, Exhibit B, p 4.

   b. AVKO will:

      i. provide HSH the content of The Works set forth in Exhibit A of the Contract See, Exhibit B, ¶ 2.a)

   c. HSH will pay:

      i. $50,000 at closing; and

      ii. SEC registered stock certificates in HSH worth $250,000 based on the midpoint of the closing bid-asked spread the day before (6/3/10) the day of closing (6/4/10) which shares would be tradable on either the OTC or NASDAQ markets.

        iii.   Another $50,00 cash and $250,000 of HSH stock as soon as HSH realizes gross revenue of $300,000 from The Works. See, Exhibit B, ¶ 3

    d.   The agreement immediately terminates and the right to publish The Works reverts to AVKO upon non-payment.  See, Exhibit B, ¶ 5.b.

    e.   Disputes will be litigated in Saginaw County Courts. See, Exhibit B, ¶ 6.a.

    f.   Parties agree not to sue each other until 45 days after written notice of a concern.  See, Exhibit B, ¶6.c.

    g.   The parties agreed to jurisdiction in Saginaw County Michigan.  See, Exhibit A, Contract, ¶

22. HSH failed to remit the HSH stocks, instead Morrow intentionally dissolved HSH.  See, Exhibit E.

23. On 06/17/2010, less than 2 weeks after signing the agreement with AVKO, Thomas Morrow resigned as Chief Executive Officer and Chairman of the company.  Morrow failed to notify AVKP or Mr. McCabe of the resignation, a material fact.  See, Exhibit E.

24. On 11/3/2010 HSH deregistered its common stock without ever paying Plaintiffs pursuant to the contract.  See, Exhibit E

25. Thomas Morrow approached Mr. McCabe and AVKO proposing that the copyrights be signed over to W3L and the AVKO sign a replacement agreement with W3L.  During that process, Morrow acknowledged that AVKO and Mr. McCabe owned the copyrights to The Works.  See, Exhibit I.

26. Morrow published 'The Works' through W3L, which had no contract with AVKO not permission to publish the books.

27. Morrow intentionally represented to the public that W3L owned copyright to The Works and printed such notices fraudulently on the literary works authored by Mr. McCabe and which copyrights are owned by AVKO.

28. After being notified that he was infringing by placing the fraudulent copyright of W3L in the materials, Morrow failed to remove them and continued to assert fraudulent copyright.

29. HSH and W3L are alter ego's of Thomas Morrow who has used these entities in intentional, tortuous, and malicious interference of the copyright ownership of AVKO and the author, Mr. McCabe.

30. It is believed that Thomas Morrow uses these corporation fronts to obtain money or other valuable assets, such as publishing rights, funnels the assets and cash to himself or co-conspirators, then dissolves the corporation.

31. After Mr. McCabe was unable to reach an accommodation with Morrow, on June 6, 2011 he directed counsel to send written notice to Morrow, HSH, and W3L regarding their concerns.  See, Exhibit C.

32. Morrow Responded denying that he has any relationship to HSH, despite signing his name for HSH; but, admitting that he has revenues of at least $252,236.78.

## COUNT 1

## COPYRIGHT INFRINGMENT

33. In the early 1970's, Donald J. McCabe wrote a book to teach reading entitles "Sequential Spelling"©.

34. The book is an original work that can be copyrighted under United States law.

35. On November 9, 1975 the copyrights estimated worth to recreate was $992,500. See, Exhibit N.

36. The book was further developed into a system of books with a curricula to teach reading and literacy called "The Works"© consisting of nearly 720 items.  See, Exhibit A, List of Books in "The Works"

37. Beginning 1974 Mr. McCabe registered copyrights for various manuscripts: (See, Exhibit J for exemplar)

    a.  Date    Class   Number

    b.  03/06/75    A    611642

    c.  03/06/75    A    611741

    d.  03/06/75    A    611728

    e.  04/04/75    A    623254

    f.  12/29/75    A    705775

    g.  12/29/75    A    705776

    h.  12/29/75    A    711306

    i.  12/29/75    A    716101

    j.  12/29/75    A    716102

    k.  12/29/75    A    716103

l.  12/29/75     A     716104

m. 12/29/75     A     716105

n.  12/29/75     A     716106

o.  12/29/75     A     716107

p.  12/29/75     A     716108

q.  01/10/77     A     815785

r.  01/10/77     A     815786

s.  01/10/77     A     815787

t.  01/10/77     A     815788

u.  01/10/77     A     815789

v.  01/10/77     A     848352

w. 12/27/77     A     928855

38. On 02/17/76 Mr. McCabe transferred his copyrights in the compilation, "The Works", to AVKO at vol 1575 page 141 - 144 .

39. Since the 1970's when the copyrights were issued, Plaintiffs continuously published all copies of "The Works" in compliance of the copyright laws and has remained the sole owner of the copyrights.

40. After the copyright was issued, the defendant infringed the copyright by publishing and selling or licensed for publication books such as the "Sequential Spelling" series from the compilation "The Works", as follows: (Because of the large number of books, only exemplars are used at this juncture)

    a.  As Copyrighted by AVKO, but printed by W3L, without consent See, Exhibit K illustrating "Sequential Spelling" with AVKO © and printed by W3L

    b.  As Copyrighted by AVKO, and copyrighted by W3L 2011.  See, Exhibit L "Sequential Spelling" with AVKO © and W3L © and printed by W3L.

    c.  As Copyrighted by W3L in 1975, 1995, 2003, 2006, and all references to AVKO were replaced by W3L so that it looks like Mr. McCabe's wife, Ann, son Robert, and daughter-in-law, Linda, were associated with W3L for years.  See, Exhibit M "Sequential Spelling" without AVKO and only with W3L displaying © for years before they were incorporated.

41. The Plaintiffs notified Defendants in writing that they were violating his copyright.

42. Defendant knew that the copyrights belonged to AVKO and tried to negotiate a purchase of the copyrights.  When Mr. McCabe and AVKO rejected the offer, Defendants proceeded to infringe the copyrights.

43. Defendants continue to infringe the copyrights by continuing to publish and sell the infringing materials in violation of the copyright, and further has engaged in unfair trade practices and unfair competition in connection with its publication and sale of the infringing materials, thus causing irreparable damage to Plaintiffs.

44. Therefore, Plaintiffs demand that:

45. Until this case is decided, the Defendant and the Defendant's agents be enjoined from disposing of any copies of the Defendants book by sale or otherwise;

46. The Defendants account for and pay as damages to the Plaintiff all profits and advantages gained from the unfair trade practices and unfair competition in selling Defendants books, and all profits and advantages gained from infringing the Plaintiffs copyrights (but no less than the statutory minimum);

47. The Defendants deliver for impoundment all copies of "The Works" in the Defendants possession or control and deliver for destruction all infringing copies and materials for making infringing copies

48. The Defendants be ordered to pay the Plaintiffs interest, costs and reasonable attorneys' fees, and

49. Plaintiff be awarded any other just relief.


## COUNT 2

## BREACH OF CONTRACT

50. Plaintiffs repeat and incorporate all of the prior and succeeding paragraphs as if fully restated herein.

51. On or about June 4, 2010, Plaintiffs and Defendant entered into a Publishing Rights Agreement (Contract), copies of which are attached hereto. See, Exhibit A.

52. That pursuant to the terms of said agreement, the Defendant agreed to pay defendant upon the signing of the contract $50,000.00 in cash and two additional payments of $250,000.00 in shares of Home School Holding stock certificates as consideration for the publishing rights to Plaintiff's copyrighted works.  See, Exhibit A, page 2.

53. Pursuant to the terms of the Contract, the Defendant agreed that once gross revenue from publication of Plaintiff's works reached $300,000.00 that Defendant would pay Plaintiff an additional $50,000.00 in cash and $250,000.00 in Home School Holdings stock. See, Exhibit A, page 2.

54. Under the terms of the Contract, the Defendant agreed to pay Plaintiff an additional $10,000.00 in cash and $10,000.00 in stock certificates in Home School Holdings should gross revenues from publication of Plaintiff's copyrighted works exceed $300,000.00 between June 4, 2010 and June 4, 2011. See, Exhibit A, page 2.

55. Defendant paid Plaintiff $50,000.00 in cash per the agreement

56. Defendant breeched the contract by not paying Plaintiff the $250,000.00 in stock of Home School Holdings, Inc. as required by the agreement.


## COUNT 3

### FRAUD AND MISREPRESENTATION IN THE INDUCEMENT

57. Plaintiffs repeat and incorporate all of the prior and succeeding paragraphs as if fully restated herein.

58. Plaintiff entered into a contract, See Exhibit A, on June 4, 2010 based on the representation of the Defendant.

59. Plaintiff justifiably relied on Defendant's statements in the contract, in particular, the $250,000.00 of stock in Home School Holdings, Inc.

60. Plaintiff executed the agreement with Defendant on June 4, 2010, as a result of Defendant's representations.

61. Defendant knew that the $250,000.00 stock offered as compensation to Plaintiff in the contract was worthless at the time of the execution as evidenced by SEC filings from the months prior to the execution of the agreement. See Exhibit E.

62. Defendant intended Plaintiff to act on the misrepresentations, by omission of a material fact, made to induce Plaintiff McCabe before and in the contract executed June 4, 2010.

63. Plaintiff lost revenue as a result of Defendant's misrepresentations. By turning over the publishing rights to Defendant, Plaintiff no longer was publishing himself and received no income from the sale of his copyrighted material by Defendant.

64. Morrow intentionally and fraudulently entered into a binding contract with Plaintiffs intending to steal the literary works of Plaintiffs for his own use.

65. To effectuate the fraud and misrepresentation, he used HSH as a front.

66. Morrow never intended to pay Plaintiffs pursuant to the contract.

Wherefore, Plaintiffs request that the defendant remit to him all the earnings obtained as a result of the fraud in the inducement and what other relief is appropriate.

### COUNT 4

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

67. The allegations in the preceding and following paragraphs are repeated and incorporated as though they had set forth herein.

68. Defendants conduct in intentionally misrepresenting that he would pay the stock when he knew he had no intention to pay was outrageous.

69. Defendants conduct in intentionally and willfully violating Plaintiffs copyrights, in an attempt to steal Plaintiff McCabe's lifelong literary work was outrageous more especially since Defendants clearly knew that Plaintiffs owned the copyrights.

70. Defendants conduct in creating the allusion that Plaintiff McCabe's wife, son, and a daughter-in-law were associated with W3L in the dedication is outrageous.

71. All of the conduct of Defendant Morrow was outrageous and Defendant Morrow knew, or should have known, that the act of violating the copyright, especially after transferring it had been rejected, would cause serious emotional distress in such an elderly man.

72. Defendants conduct caused Plaintiff to suffer severe emotional distress.

Wherefore, Plaintiff requests that Defendant compensate Plaintiff for the injury.


## COUNT 5

## INJUNCTION

73. There is the likelihood of irreparable harm to plaintiffs if no injunctions issues as the public will believe that W3L is the owner and author of "The Works" and Plaintiff may not be able to correct that misrepresentation.

74. There is no remedy at law to correct being placed in a false light.

75. The conduct of the Defendant in stealing the copyright is akin to stealing ones child. Also, the loss of reputation cannot be corrected by monetary damages.

76. The threatened harm to Plaintiff outweighs the harm to Defendant.

77. Granting the injunction will not harm the public.

78. Plaintiff has a substantial likelihood of prevailing.

Wherefore, Plaintiff requests that the Court grant Plaintiff at least a temporary injunction preventing them from printing, advertising, selling, or otherwise

## DAMAGES

79. The allegations in the preceding and following paragraphs are repeated and incorporated as though they had set forth herein.

80. Plaintiff McCabe has been injured by the intentional, wanton and malicious conduct of Defendants as set forth above such that he has lost faith in the honesty of business men, fears getting involved with another entity to fulfill his need to reduce the demands of this business at his time in his life, has lost the benefit of the earning that would have been generated had he not been duped by Defendants

## JURY DEMAND

Plaintiffs demand a jury to try these issues.

## PRAYER

Wherefore, for the reasons set forth above and all paragraphs incorporated herein, Plaintiffs demand that :

81. Until this case is decided, the Defendant and the Defendant's agents be enjoined from disposing of any copies of the Defendants book by sale or otherwise;

82. The Defendants account for and pay as damages to the Plaintiff all profits and advantages gained from the unfair trade practices and unfair competition in selling Defendants books, and all profits and advantages gained from infringing the Plaintiffs copyrights (but no less than the statutory minimum);

83. The Defendants deliver for impoundment all copies of "The Works" in the Defendants possession or control and deliver for destruction all infringing copies and materials for making infringing copies

84. The Defendants be ordered to pay the Plaintiffs interest, costs and reasonable attorneys' fees, and

85. Plaintiff be awarded any other just relief.

Respectfully requested,

Dated: July 27, 2010

Susan Payne Woodrow P29844
Attorneys for Plaintiffs
Sigurd Hepler P70383
Susan Payne Woodrow JD, PC
PO Box 300833
Drayton Plains, MI 4830
PH: (248) 623-1818
FX: (248) 623-1811
suzywoodrow@hotmail.com
heplerlaw@comcast.net

## Exhibit A –"The Works"

1. The Patterns of English Spelling with their Word Families put into Sentence Context Vol. 1

2. The Patterns of English Spelling with their Word Families put into Sentence Context Vol. 2

3. The Patterns of English Spelling with their Word Families put into Sentence Context Vol. 3

4. The Patterns of English Spelling with their Word Families put into Sentence Context Vol. 4

5. The Patterns of English Spelling with their Word Families put into Sentence Context Vol. 5

6. The Patterns of English Spelling with their Word Families put into Sentence Context Vol. 6

7. The Patterns of English Spelling with their Word Families put into Sentence Context Vol. 7

8. The Patterns of English Spelling with their Word Families put into Sentence Context Vol. 8

9. The Patterns of English Spelling with their Word Families put into Sentence Context Vol. 9

10. The Patterns of English Spelling with their Word Families put into Sentence Context Vol. 10

11. The Patterns of English Spelling with their Word Families put into Sentence Context Vols. 1-5

12. The Patterns of English Spelling with their Word Families put into Sentence Context Vols. 6-10

13. The Patterns of English Spelling with their Word Families put into Sentence Context Vols. 1-10

14. Word Families in Sentence Context

15. Sequential Spelling 1

16. Sequential Spelling 2

17. Sequential Spelling 3

18. Sequential Spelling 4

19. Sequential Spelling 5

20. Sequential Spelling 6

21. Sequential Spelling 7

22. Speech to Spelling

23. Student Response Book for Sequential Spelling

24. Engaging Language Kit 1

25. Engaging Language Kit 2

26. Engaging Language Kit 3

27. Engaging Language Kit 4

28. Engaging Language Kit 5

29. Engaging Language Kit 6

30. Engaging Language Kit 7

31. Engaging Language Kits 1-7

32. Sequential Spelling for Adults

33. Individualized Spelling

34. If it is to be it is up to me to do it.

35. If it is to be it is up to US to HELP.

36. Mechanics of English Spelling

37. The Tricky Words

38. The IT-ss and the TOOZE, Apostrophes and the I before E Rule Made Easy

39. Reading Teacher's List of Over 5,000 Basic Spelling Words

40. Readings for Fluency

41. Let's Write Right

42. Rimes and More Rhymes

43. Starting at Square One

44. Individualized Keyboarding

45. Individualized Keyboarding Teacher Edition

46. The Teaching of Reading and Spelling: a Continuum from Kindergarten through College

47. To Teach a Dyslexic

48. Get Outta My Face! Get Offa My Case!

49. 220 Names and Faces, 220 Dolch Words Are Too Many for Students with Memories like Mine.

AVKO v MORROW EX A p 2 of 4