## UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF MICHIGAN

AVKO EDUCATIONAL RESEARCH
FOUNDATION, a Michigan
Corporation, and DONALD J.
MCCABE, author,

     Plaintiffs,

         v.

THOMAS A. MORROW, an individual,
WAVE 3 LEARNING, INC.; HOME
SCHOOL HOLDINGS, INC., and
HOME SCHOOL, INC;

     Defendants.

Case No.: 1:11-cv-13381-TLL-CEB
Honorable Thomas L. Ludington
Magistrate Charles E. Binder

_____

SUSAN PAYNE WOODROW
(P29844)
PO Box 300833
Drayton Plains, MI  48300
*Attorney for Plaintiff*
(248) 760-1818
enddebt@live.com

MARK G. CLARK (P41652)
JOHN DI GIACOMO (P73056)
TRAVERSE LEGAL, PLC
*Attorneys for Defendants*
*Thomas A. Morrow and*
*Wave 3 Learning, Inc.*
810 Cottageview Drive, Unit G-20
Traverse City, MI 49684
(231) 932-0411
mark@traverselegal.com
john@traverselegal.com

_____

## DEFENDANTS THOMAS A. MORROW AND WAVE 3 LEARNING, INC. ANSWER TO PLAINTIFFS' COMPLAINT AND COUNTERCLAIM AND DEMAND FOR JURY

### I.    ANSWER

### JURISDICTION

1.  Admitted.

1

2.  Denied.

3.  Denied.

4.  Denied.

5.  Denied.

6.  Defendants deny the allegations in Paragraph 6 for lack of knowledge and, therefore, leave Plaintiffs to their proofs.

## **PARTIES**

7.  Defendants deny the allegations in Paragraph 7 for lack of knowledge and, therefore, leave Plaintiffs to their proofs.

8.  Denied. Defendant Thomas Morrow's middle initial is A and he does not live in Des Plaines, IL.

    a.  Denied in part and admitted in part. Thomas A. Morrow was formerly the Chairman and CEO of Home School Holdings, Inc.

    b.  Denied in part and admitted in part. Thomas A. Morrow is the President of Wave 3 Learning, Inc.

    c.  Denied in part and admitted in part. Thomas A. Morrow was an officer of Home School, Inc.

9.  Defendants deny the allegations in Paragraph 9 for lack of knowledge and, therefore, leave Plaintiff to its proofs.

10. Denied.

11. Admitted.

12. Denied.

## STATEMENT OF THE CASE

13. Defendants deny the allegations in Paragraph 13 for lack of knowledge and, therefore, leave Plaintiffs to their proofs.

14. Defendants deny the allegations in Paragraph 14 for lack of knowledge and, therefore, leave Plaintiffs to their proofs.

15. Defendants deny the allegations in Paragraph 15 for lack of knowledge and, therefore, leave Plaintiffs to their proofs.

16. Defendants deny the allegations in Paragraph 16 for lack of knowledge and, therefore, leave Plaintiffs to their proofs.

17. Defendants deny the allegations in Paragraph 17 for lack of knowledge and, therefore, leave Plaintiffs to their proofs.

18. Denied.

19. Defendants deny the allegations in Paragraph 19 for lack of knowledge and, therefore, leave Plaintiffs to their proofs.

20. Defendants deny the allegations in Paragraph 20 for lack of knowledge and, therefore, leave Plaintiffs to their proofs.

21. Admitted.

    a. Admitted.

    b. No answer is necessary.

        i. Defendants deny the allegations in Paragraph 21(b)(i) for lack of knowledge and, therefore, leave Plaintiffs to their proofs.

    c.  No answer is necessary.

        i.  Defendants deny the allegations in Paragraph 21(c)(i) for lack of knowledge and, therefore, leave Plaintiffs to their proofs.

        ii.  Defendants deny the allegations in Paragraph 21(c)(ii) for lack of knowledge and, therefore, leave Plaintiffs to their proofs.

        iii.  Defendants deny the allegations in Paragraph 21(c)(iii) for lack of knowledge and, therefore, leave Plaintiffs to their proofs.

    d.  Defendants deny the allegations in Paragraph 21(d) for lack of knowledge and, therefore, leave Plaintiffs to their proofs.

    e.  Defendants deny the allegations in Paragraph 21(e) for lack of knowledge and, therefore, leave Plaintiffs to their proofs.

    f.  Defendants deny the allegations in Paragraph 21(f) for lack of knowledge and, therefore, leave Plaintiffs to their proofs.

    g.  Defendants deny the allegations in Paragraph 21(g) for lack of knowledge and, therefore, leave Plaintiffs to their proofs.

22. Denied.

23. Denied.

24. Denied.

25. Admitted.

26. Denied.

27. Denied.

28. Denied.

29. Denied.

30. Denied.

31. Defendants deny the allegations in Paragraph 31 for lack of knowledge and, therefore, leave Plaintiffs to their proofs.

32. Denied.

## COUNT I
## COPYRIGHT INFRINGEMENT

33. Defendants deny the allegations in Paragraph 33 for lack of knowledge and, therefore, leave Plaintiffs to their proofs.

34. Defendants deny the allegations in Paragraph 34 for lack of knowledge and, therefore, leave Plaintiffs to their proofs.

35. Defendants deny the allegations in Paragraph 35 for lack of knowledge and, therefore, leave Plaintiffs to their proofs.

36. Defendants deny the allegations in Paragraph 36 for lack of knowledge and, therefore, leave Plaintiffs to their proofs.

37. Defendants deny the allegations in Paragraph 37 for lack of knowledge and, therefore, leave Plaintiffs to their proofs.

38. Defendants deny the allegations in Paragraph 38 for lack of knowledge and, therefore, leave Plaintiffs to their proofs.

39. Defendants deny the allegations in Paragraph 39 for lack of knowledge and, therefore, leave Plaintiffs to their proofs.

40. Denied.

    a.  Denied.

    b.  Denied.

    c.  Denied.

41. Defendants deny the allegations in Paragraph 41 for lack of knowledge and, therefore, leave Plaintiffs to their proofs.

42. Denied.

43. Denied.

44. No answer is necessary.

45. No answer is necessary.

46. No answer is necessary.

47. No answer is necessary.

48. No answer is necessary.

49. No answer is necessary.

**<u>COUNT II</u>**
**<u>BREACH OF CONTRACT</u>**

50. No answer is necessary.

51. Denied.

52. Denied.

53. Denied.

54. Denied.

55. Denied.

56. Denied.

## COUNT III
## FRAUD AND MISREPRESENTATION IN THE INDUCEMENT

57. No answer is necessary.

58. Denied.

59. Denied.

60. Denied.

61. Denied.

62. Denied.

63. Defendants deny the allegations in Paragraph 63 for lack of knowledge

and, therefore, leave Plaintiffs to their proofs.

64. Denied.

65. Denied.

66. Denied.


## COUNT IV
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

67. No answer is necessary.

68. Denied.

69. Denied.

70. Denied.

71. Denied.

72. Denied.

**COUNT V**
**INJUNCTION**

73. Denied.

74. Denied.

75. Denied.

76. Denied.

77. Denied.

78. Denied.

79. No answer is necessary.

80. Denied.

81. No answer is necessary.

82. No answer is necessary.

83. No answer is necessary.

84. No answer is necessary.

85. No answer is necessary.

## II.    AFFIRMATIVE DEFENSES

1.  Plaintiffs are not entitled to relief because Plaintiffs have failed to attach a
    certificate of copyright registration, or a letter establishing the denial of an
    application for copyright registration, to the Complaint. Consequently,
    Plaintiffs have failed to invoke federal question jurisdiction, which is a
    prerequisite to a copyright infringement lawsuit.

2.  Plaintiffs are not entitled to relief because Plaintiffs have failed to state a
    claim upon which relief can be granted. Plaintiffs lack copyright rights in

the alleged copyrighted works because those works were created and published prior to January 1, 1978. As such, those works have fallen into the public domain and are no longer protected by copyright law.

3. Plaintiff AVKO is not entitled to relief because it lacks standing to assert copyright claims. Plaintiff AVKO has not attached an assignment agreement to the Complaint establishing that AVKO is an exclusive licensee or an assignee of copyright rights from Plaintiff Donald J. McCabe.

4. Plaintiffs are not entitled to relief because, alternatively, Defendant Wave 3 Learning, Inc. properly received an assignment or license of the copyrighted works that are alleged to have been infringed from Plaintiffs.

5. Plaintiffs are not entitled to relief because they have committed fraud in inducing Defendants to enter into an agreement with Plaintiffs.

6. Plaintiffs are not entitled to relief because they have failed to state a claim for copyright infringement for the reason that the claim is unsupported by factual allegations.

7. Plaintiffs are not entitled to relief because they have failed to state a claim for breach of contract for the reason that the claim is unsupported by factual allegations.

8. Plaintiffs are not entitled to relief because they have failed to state a claim for fraud and misrepresentation in the inducement for the reason that the claim is unsupported by factual allegations.

9.  Plaintiffs are not entitled to relief because they have failed to state a claim for intentional infliction of emotional distress for the reason that the claim is unsupported by factual allegations.

10. Plaintiffs are not entitled to injunctive relief because they have failed to state a claim that is supported by factual allegations.

11. Defendants reserve the right to add additional affirmative defenses as they become known through discovery.

Defendants acknowledge Plaintiffs' demand for a trial by jury.

### PRAYER FOR RELIEF

Defendant respectfully prays that the Court:

1.  Dismiss Plaintiffs' claims;

2.  Award Defendants their attorneys' fees wrongfully sustained in the action;

3.  Award Defendants the relief requested in their counterclaim to be filed in this action;

4.  Award Defendants such further relief as the Court deems appropriate; and

5.  Award Defendants their costs.

6.  Defendants request a trial by jury.

### III.   COUNTERCLAIMS

Defendants Wave 3 Learning, Inc. and Thomas Morrow, by and through their attorneys Traverse Legal, PLC, hereby counterclaim against Plaintiffs Donald J. McCabe and AVKO Educational Research Foundation, Inc. as follows:

**PARTIES**

1.  Counter-Plaintiff Wave 3 Learning, Inc. ("Wave 3 Learning") is a
    corporation organized under the laws of the State of Nevada with its
    principal place of business in Arlington Heights, Illinois.

2.  Counter-Plaintiff Thomas Morrow ("Morrow") is an individual residing in
    Arlington Heights, Illinois.

3.  Counter-Defendant AVKO Educational Research Foundation, Inc. is a
    domestic non-profit corporation organized under the laws of the State of
    Michigan ("AVKO").

4.  Counter-Defendant Donald J. McCabe is a resident of Birch Run,
    Michigan and is listed as AVKO's "Research Director" on AVKO's IRS
    990-EZ form ("McCabe").

**JURISDICTION AND VENUE**

5.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331
    and 1338 because this matter raises federal questions under the
    Copyright Act of 1909 over which this Court has original jurisdiction.

6.  This Court has supplemental jurisdiction over the claims in this
    Counterclaim that arise under common law in the State of Michigan
    pursuant to 28 U.S.C. § 1367(a) because the state law claims are so
    related to the federal claims that they form part of the same case or
    controversy and derive from a common nucleus of operative facts.

7. This Court has personal jurisdiction over Counter-Defendants. Counter-Defendants: (a) have committed intentional and tortious acts within this State; (b) have conducted substantial, continuous, and systematic business within this State related to the unlawful activity at issue in these Counterclaims; and (c) may be found and/or transact business in this State.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because all Counter-Defendants reside in the State of Michigan.

### FACTS

9. AVKO is a purported non-profit membership-based organization that develops and produces commercial educational materials concerning reading, spelling, handwriting, and keyboarding.

10. AVKO produces numerous instructional books and videos, which it sells through its website for prices ranging from $2.50 to $359.90. See **Exhibit A**, Printout of Materials from AVKO Educational Research Foundation.

11. In 2009, Counter-Plaintiff Morrow was chairman and CEO of Home School Holdings, Inc., a corporation located in Des Plaines, Illinois ("Home School Holdings").

12. In mid 2009, Home School Holdings adopted a strategy of growth that relied heavily on acquisitions, which its board deemed the "baby steps" program. The purpose of this program was to acquire smaller, pre-existing publishing companies within the home school market to expand the offerings of Home School Holdings.

13. As a component of this strategy, Home School Holdings sought to raise additional capital through an initial public offering, and it applied to register as a publicly traded company with the US Securities and Exchange Commission.

14. In May 2009, McCabe contacted Morrow, in his position as an officer of Home School Holdings, to sell the copyright rights of several of AVKO's instructional materials to Home School Holdings. A list of these works is attached to Defendants' Counterclaim as **Exhibit B** ("The Works").

15. Home School Holdings filed its Form S-1 with the Securities and Exchange Commission on October 13, 2009. See **Exhibit C**, Home School Holdings S-1 Filing.

16. In December of 2009, Home School Holdings entered into negotiations with AVKO and McCabe to purchase the rights to The Works.

17. During these negotiations, Counter-Defendant McCabe represented that AVKO regularly received over $300,000 in gross revenue annually from the sale of The Works. See **Exhibit F**, Affidavit of Thomas Morrow.

18. Counter-Defendant McCabe also represented that he had acquired registered copyright rights in and to The Works, that those copyright rights were assigned to AVKO, and that those copyright rights were still subsisting.

19. Through these negotiations, AVKO agreed to assign to Home School Holdings the worldwide exclusive rights to The Works. In exchange, Home School Holdings was to provide AVKO with a percentage of the proceeds

of each sale of The Works, $50,000, and stock certificates in Home School Holdings worth $250,000.

20. The parties also agreed that, soon after closing and after Home School Holdings realized a gross revenue of $300,000 from the sale of its newly acquired publications, Home School Holdings was to pay AVKO an additional $50,000 in cash and provide stock certificates for an additional $250,000 worth of shares.

21. Furthermore, if Home School Holdings realized revenue greater than $300,000 in the first year, AVKO was to receive an additional $10,000 and stock certificates worth an additional $10,000 for every $300,000 increase.

22. Additionally, Home School Holdings was to grant a non-exclusive license to AVKO, which would allow AVKO to continue to distribute The Works to individuals through its website, e-books, phone orders, and community sales. In turn, Home School Holdings agreed to sell copies of The Works to AVKO at a sixty percent (60%) discount from their suggested retail price on consignment for these purposes.

23. These terms were codified in an agreement drafted by a non-lawyer, which was titled "Publishing Rights Agreement." Home School Holdings provided AVKO with this agreement on December 17, 2009. See **Exhibit D**, Publishing Rights Agreement (first draft). This agreement recognized that "HSH is a public company" and that the $250,000 in shares to be provided to AVKO "would be tradeable in accordance with SEC

regulations on, first, the OTC market and then the NASDAQ when the Company moves its listing."

24. On May 17, 2010, Home School Holdings announced that it would be unable to timely file its 10-Q filing pursuant to SEC regulations and was given permission from the SEC to file the 10-Q at a later time.

25. On June 3, 2010, Morrow issued a cashiers check to AVKO from his personal bank account for $50,000, which was the amount of the first payment required of Home School Holdings under the Publishing Rights Agreement. See **Exhibit E**, Copy of Cashier's Check.

26. AVKO and Home School Holdings subsequently executed the Publishing Rights Agreement on June 4, 2010. See **Exhibit G**, Executed Publishing Rights Agreement.

27. Home School Holdings provided AVKO with a stock Subscription Agreement on June 3, 2010. See **Exhibit H,** screen shot of June 3, 2010 email from Thomas Morrow to Don McCabe attaching first draft of Subscription Agreement.  Also see **Exhibit F**, Affidavit of Thomas Morrow.

28. Counter-Defendant McCabe refused to sign the Subscription Agreement because it referenced a "purchase of shares," which Counter-Defendant McCabe presumably believed required him to purchase additional shares. See **Exhibit F**, Affidavit of Thomas Morrow.

29. Home School Holdings removed the "purchase of shares" language and again provided Counter-Defendant McCabe with the Subscription Agreement on June 8, 2010. McCabe refused to sign the Subscription

Agreement without explanation. See **Exhibit I,** screen shop of June 8, 2010 email from Thomas Morrow to Don McCabe attaching amended Subscription Agreement. Also, See **Exhibit F**, Affidavit of Thomas Morrow.

30. Since McCabe refused to sign the Subscription Agreement, the shares could not be legally delivered.

31. During this time, Home School Holdings continued to proceed through the SEC registration process. Home School Holdings had numerous difficulties throughout the SEC registration process and ultimately did not secure registration.

32. Since Home School Holdings' IPO attempt soon became unworkable, Counter-Plaintiff Morrow resigned as chairman and CEO of Home School Holdings, Inc. on June 17, 2010. Counter-Plaintiff Morrow could not provide AVKO with prior notice of his resignation from Home School Holdings, as such prior notice would have been a violation of SEC disclosure requirements. See **Exhibit F**, Affidavit of Thomas Morrow.

33. It soon became clear to Counter-Defendant McCabe that Home School Holdings could not meet its requirements under the Publishing Rights Agreement, and Counter-Plaintiff Morrow offered to continue the same deal through a newly-created entity, namely, Wave 3 Learning, Inc. See **Exhibit F**, Affidavit of Thomas Morrow.

34. Counter-Plaintiff Morrow incorporated Counter-Plaintiff Wave 3 Learning, Inc. in the State of Nevada on June 18, 2010. See **Exhibit J**, Printout of Nevada Corporate Filing.

35. Counter-Defendants McCabe and AVKO accepted Morrow's offer, and the parties continued to operate under the terms of the Publishing Rights Agreement. See **Exhibit F**, Affidavit of Thomas Morrow.

36. Between June and July of 2010, Wave 3 Learning and AVKO discussed executing a replacement for the Publishing Rights Agreement because Wave 3 Learning had no intention of issuing its stock to the public.

37. On July 20, 2010, Counter-Plaintiff Wave 3 Learning suggested replacing the stock shares contained in the Publishing Rights Agreement with a promissory note that would be payable to AVKO and requested that Counter-Defendant McCabe's attorney draft a replacement for the Publishing Rights Agreement. See **Exhibit K**, Printout of July 20, 2010 Email and response.

38. In response, and also on July 20, 2010, Counter-Defendant McCabe replied,

> Until you can come with an agreement that my attorney can justify my signing, we had better just maintain the status quo. Any type of stock or ownership sharing that could possibly lead to AVKO being liable for debts incurred by Wave 3 Learning is not in our best interest.

So save your gas and your time. There's no point in your making another trip to Michigan in the immediate future. Instead spend your time and energy into the publishing aspect of Wave3Learning getting your ISBNs, editing and printing the AVKO materials.

39. Consequently, Wave 3 Learning continued to operate under the terms of the Publishing Rights Agreement, which was the parties' "status quo."

40. On November 3, 2010, Home School Holdings, Inc. filed a Form 15 with the Securities and Exchange Commission to voluntarily terminate its attempt to register and publicly trade its shares.

41. On October 9, 2010, Counter-Defendant McCabe executed AVKO's yearly IRS Form 990-EZ, which stated that AVKO had sold the rights to the copyrighted works to Wave 3 Learning. See **Exhibit L**, AVKO Form 990-EZ.

42. Wave 3 Learning soon noticed that a third party had cybersquatted upon the sequentialspelling.com domain name and sought to recover that domain name through the Uniform Domain Name Dispute Resolution Policy in December 2010. "Sequential Spelling" is the most popular product lines contained within The Works.

43. Since the Publishing Rights Agreement was inartfully drafted and was completely silent on the issue of trademark rights, Counter-Plaintiff Wave 3 Learning provided Counter-Defendant AVKO with a replacement agreement on January 28, 2011 that would have provided Wave 3

Learning with the standing needed under trademark law to take any and all necessary action. See **Exhibit M**, Printout of January 28, 2011 Email.

44. AVKO refused to sign the replacement agreement, which was titled "Trademark and Copyright Assignment Agreement," and claimed that Wave 3 Learning had failed to provide Counter-Defendant McCabe with speaking engagements, training sessions, previews of any proposed changes to The Works, and the stock options provided for under AVKO's agreement with Home School Holdings. See **Exhibit N**, Printout of January 29, 2011 Response Email.

45. Counter-Plaintiff responded by explaining to Counter-Defendant McCabe that there is no difference between an exclusive, worldwide, and perpetual publishing right and the assignment of the copyrighted works and requested that the parties work to execute a replacement agreement. See **Exhibit O**, Printout of January 29, 2011 Response Email from Morrow.

46. On January 31, 2011, Wave 3 Learning suggested that both AVKO and Wave 3 Learning undergo a "Cooling Off Period" after which time the parties would reconvene to discuss their purported dispute. See **Exhibit P**, January 31, 2011 Email from Morrow.

47. On February 24, 2011, Counter-Defendant McCabe, operating under the terms of the Publishing Rights Agreement, requested desk copies of six of The Works from Wave 3 Learning. See **Exhibit Q**, February 24, 2011 Email from Don McCabe.

19

48. Wave 3 Learning responded to this request on February 25, 2011 and agreed to provide desk copies "in accordance with our [Publishing Rights] agreement." Additionally, Wave 3 Learning also requested that AVKO cease a breach of that agreement related to its publishing of electronic versions of The Works and requested AVKO's support in protecting the Sequential Spelling trademark and copyrights. See **Exhibit R**, February 25, 2011 Email from Morrow.

49. In a February 28, 2011 email to Counter-Defendant McCabe's grandson, Counter-Plaintiff Morrow explained that the purpose of the grant of a non-exclusive license back to AVKO under the Publishing Rights Agreement so that AVKO may continue to offer The Works was intended "to provide a way to further motivate membership in the Foundation by providing bargain access to the Works as opposed to operating a profit center per se." See **Exhibit S**, February 28, 2011 Email from Morrow.

50. During this period of dispute, AVKO continued to pay invoices issued by Wave 3 Learning and continued to operate under the general terms of the Publishing Rights Agreement. See **Exhibit F**, Affidavit of Morrow.

51. On June 6, 2011, AVKO's attorney sent a demand letter to Counter-Plaintiff Morrow that claimed that Wave 3 Learning had infringed upon AVKO's copyright rights and had breached the Publishing Rights Agreement by failing to make payment of $50,000 under ¶ 3 of that agreement. See **Exhibit T**, June 6, 2011 (incorrectly dated June 6, 2010) Letter from Woodrow.

52. Counter-Plaintiff Wave 3 Learning responded to AVKO's demand letter on June 13, 2011 and stated that Wave 3 Learning had paid Counter-Defendant McCabe $50,000. Wave 3 Learning attached evidence of that payment in its response. See **Exhibit U**, June 13, 2011 Letter from Wave 3 Learning.

53. On June 24, 2011, Counter-Plaintiff Wave 3 Learning was provided an email by a retailer of its products. This email was from a customer of that retailer and stated that the customer had contacted AVKO, who had stated that it was in a copyright infringement lawsuit with Wave 3 Learning and that Wave 3 Learning had been copying the AVKO books. See **Exhibit F**, Affidavit of Thomas Morrow.

54. In response, Wave 3 Learning sent a cease and desist letter to AVKO on July 12, 2011. In that letter, Wave 3 Learning stated that it had copyright rights to The Works pursuant to the Publishing Rights Agreement and that, as a result of AVKO's false statements, AVKO was liable for defamation and tortious interference with contractual and prospective economic advantage. See **Exhibit V**, July 12, 2011 Letter to Woodrow.

55. Counter-Defendants' counsel via telephone contacted Wave 3 Learning's counsel on July 19, 2011. In that phone conversation, Wave 3 Learning's counsel explained that both parties had operated under and assented to the terms of the Publishing Rights Agreement and that AVKO's allegations of copyright infringement were without merit and constituted defamation and tortious interference.

56. In response, Counter-Defendants filed a Petition for Injunctive Relief and Temporary Restraining Order in Genesee County, Michigan, which was denied. See **Exhibit W**, AVKO Petition for Injunctive Relief and TRO.

57. Counter-Defendants then filed a Complaint in the Saginaw County Circuit Court on July 29, 2011, which alleged claims of copyright infringement, breach of contract, fraud and misrepresentation in the inducement, and intentional infliction of emotional distress. See **Exhibit X**, Complaint.

58. On August 3, 2011, Defendants filed a Notice of Removal with the Saginaw County Circuit Court pursuant to 28 U.S.C. § 1441(a) because federal courts have original jurisdiction to hear claims of copyright infringement under 28 U.S.C. § 1338(a).

## COUNT I – FRAUD IN THE INDUCEMENT

59. Counter-Plaintiffs incorporate paragraphs 1-58 above as though fully restated herein.

60. Counter-Defendants McCabe and AVKO made a material representation that AVKO owned copyright rights in and to The Works.

61. In reality, The Works were in the public domain pursuant to the Copyright Act of 1909 at the time of Counter-Defendants' representation.

62. Consequently, Counter-Defendants' material representation that AVKO owned copyright rights in and to The Works was false.

63. Counter-Defendants' either knew that its representation that The Works were copyrighted was false or they made this representation recklessly without knowledge of its truth and as a positive assertion.

64. Counter-Defendants' made the representation that The Works were copyrighted with the intention that Counter-Plaintiff Wave 3 Learning would act upon it.

65. Counter-Plaintiff Wave 3 Learning acted upon Counter-Defendants' false representation.

66. As a result of Counter-Plaintiff's reliance and action upon Counter-Defendants' false representation, Counter-Plaintiff Wave 3 Learning suffered damages.

67. Counter-Defendants also made a material representation that AVKO earned annual gross revenue of $300,000 from the sale of The Works.

68. AVKO never annually received annual gross revenue of $300,000 from the sale of The Works.

69. Consequently, Counter-Defendants' representation that AVKO earned $300,000 in annual gross revenue from the sale of The Works was false.

70. Counter-Defendants knew that AVKO did not earn $300,000 in annual gross revenue from the sale of The Works at the time Counter-Defendants made that representation or, alternatively, made that representation recklessly, without knowledge of its truth and as a positive assertion.

71. Counter-Defendants represented that AVKO earned $300,000 in annual gross revenue from the sale of The Works with the intention that Counter-Plaintiff Wave 3 Learning would act upon it.

72. Counter-Plaintiff Wave 3 Learning acted in reliance upon Counter-Defendants' representation that AVKO averaged $300,000 in annual gross revenue from the sale of The Works.

73. As a result of Counter-Plaintiff Wave 3 Learning's reliance upon Counter-Defendants' statement, Counter-Plaintiff Wave 3 Learning suffered damages.

74. Counter-Defendant AVKO also made a material representation that Inquisicorp, Inc., purported to be one of AVKO's largest customers and responsible for approximately 25% of AVKO's business, was to continue to purchasing physical copies of The Works from Wave 3 Learning into the known future.

75. Inquisicorp, Inc., however, intended to terminate its relationship with AVKO and, consequently, Wave 3 Learning, because Counter-Defendant AVKO had failed to maintain and update its curriculum.

76. When Counter-Defendant AVKO represented that Inquisicorp, Inc. would continue its relationship with AVKO, Counter-Defendant AVKO knew that its representation was false or, alternatively, made its representation recklessly, without knowledge of its truth and as a positive assertion.

77. Counter-Defendant AVKO represented that its relationship with Inquisicorp, Inc. would continue with the intention that Counter-Plaintiff Wave 3 Learning would rely upon it.

78. Counter-Plaintiff Wave 3 Learning relied upon AVKO's representation that its relationship with Inquisicorp, Inc. would continue.

79. As a result of its reliance upon Counter-Defendant's representation that its relationship with Inquisicorp, Inc. would continue, Counter-Plaintiff Wave 3 Learning suffered damages.

### COUNT II – BREACH OF CONTRACT/IMPLIED WARRANTY OF TITLE

80. Counter-Plaintiffs incorporate paragraphs 1-79 as though fully restated herein.

81. Both Counter-Defendant AVKO and Counter-Plaintiff Wave 3 Learning are merchants who deal in goods of the kind.

82. Since Counter-Defendant AVKO's deal with Home School Holdings could not move forward, Counter-Defendant AVKO and Counter-Plaintiff Wave 3 Learning entered into an agreement with substantially the same terms.

83. Counter-Defendant AVKO entered into an agreement with Counter-Plaintiff Wave 3 Learning on June 19, 2010.

84. The terms of the agreement between AVKO and Wave 3 Learning were evidenced by the Publishing Rights Agreement, which was previously executed by AVKO and Home School Holdings. See **Exhibit G**, Executed Publishing Rights Agreement.

85. Counter-Defendant AVKO and Counter-Plaintiff Wave 3 Learning orally agreed to enter into a contract evidenced by the same terms as the Publishing Rights Agreement and to "maintain the status quo."

86. Counter-Defendant AVKO agreed to substitute the stock options that were previously offered under the Publishing Rights Agreement with equally valuable consideration at a later time.

87. In consideration for the substituted agreement, Counter-Defendant AVKO retained Counter-Plaintiff Morrow's payment of $50,000.

88. Under both MCL 440.2312 and the common law of contracts, there is in every contract for sale a warranty by the seller that the title conveyed shall be good and and its transfer rightful.

89. Counter-Defendant AVKO did not have adequate title to The Works because The Works were in the public domain at the time the parties entered into the contract.

90. Consequently, Counter-Defendant AVKO breached the implied warranty of title inherent in the parties' contract, as well as the contract itself.

## COUNT III – UNJUST ENRICHMENT

91. Counter-Plaintiffs incorporate paragraphs 1-90 as though fully restated herein.

92. Counter-Plaintiff Wave 3 Learning and Counter-Defendant AVKO entered into an agreement evidenced by the terms of the Publishing Rights Agreement.

93. Under the terms of the agreement between Wave 3 Learning and AVKO, AVKO was to provide Wave 3 Learning with the perpetual, exclusive, and worldwide right to The Works.

94. Counter-Defendant AVKO could not provide Wave 3 Learning with a perpetual, exclusive, and worldwide right to The Works because The Works are currently in the public domain.

95. Additionally, during negotiations, Counter-Defendant AVKO represented that its annual gross revenue from the sale of The Works was $300,000.

96. Counter-Plaintiff Wave 3 Learning relied upon Counter-Defendant AVKO's representation that its annual gross revenue from the sale of The Works was $300,000.

97. In reliance upon AVKO's misrepresentation of its annual gross revenue and its right and title to The Works, Counter-Plaintiff Wave 3 Learning paid AVKO $50,000.

98. Counter-Defendant AVKO received and retained this benefit to the detriment of Counter-Plaintiff Wave 3 Learning.

99. Counter-Defendant AVKO's retention of this benefit has resulted in an inequity to Counter-Plaintiff Wave 3 Learning.

## COUNT IV – DEFAMATION

100.     Counter-Plaintiffs incorporate paragraphs 1-99 as though fully restated herein.

101.     Counter-Defendants published a false statement, namely, that Counter-Plaintiff Wave 3 Learning did not have the right to sell or distribute The Works.

102.     Counter-Defendants' unprivileged false statement was published to a third party, specifically, a potential customer of Wave 3 Learning.

103.     Counter-Defendants published this false and unprivileged statement negligently and with malice.

104.     Counter-Defendants' publication of this false and unprivileged statement has lowered Counter-Plaintiff Wave 3 Learning's estimation within the community and has deterred third persons from associating or dealing with Counter-Plaintiff.

105.     Counter-Defendants' publication of this false and unprivileged statement resulted in damages to Counter-Plaintiff Wave 3 Learning.

**COUNT V – DEFAMATION PER SE**

106.     Counter-Plaintiffs incorporate paragraphs 1-105 as though fully restated herein.

107.     Counter-Defendants published a false statement, namely, that Counter-Plaintiff Wave 3 Learning did not have the right to sell or distribute The Works.

108.     Counter-Defendants' unprivileged false statement was published to a third party, specifically, a potential customer of Wave 3 Learning.

109.     Counter-Defendants published this false and unprivileged statement negligently and with malice.

110.     Counter-Defendants' false statement contended Counter-Plaintiff
         Wave 3 Learning was involved in the commission of a crime and was
         actionable on its face.

111.     Counter-Defendants' publication of this false and unprivileged
         statement has lowered Counter-Plaintiff Wave 3 Learning's estimation
         within the community and has deterred third persons from associating or
         dealing with Counter-Plaintiff.

112.     Counter-Defendants' publication of this false and unprivileged
         statement resulted in damages to Counter-Plaintiff Wave 3 Learning.

## COUNT VI – TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP OR EXPECTANCY

113.     Counter-Plaintiffs incorporate paragraphs 1-112 as though fully
         restated herein.

114.     Counter-Plaintiff Wave 3 Learning had an existing and valid
         business relationship or expectancy with an identified customer.

115.     Counter-Defendants AVKO and McCabe knew of Counter-Plaintiff
         Wave 3 Learning's relationship or expectancy with the identified customer.

116.     Counter-Defendants AVKO and McCabe intentionally interfered
         with Counter-Plaintiff's relationship or expectancy with the identified
         customer in falsely informing the customer that Counter-Plaintiff did not
         have the right to sell or distribute The Works.

117.     As a result of Counter-Defendants' intentional interference, Counter-Plaintiff's relationship or expectancy with the identified customer was terminated.

118.     The termination of Counter-Plaintiff's relationship or expectancy with the identified customer resulted in damages to Counter-Plaintiff Wave 3 Learning

## **PRAYER FOR RELIEF**

WHEREFORE, Counter-Plaintiffs respectfully request that the Court enter judgment against Counter-Defendants including, but not limited to, the following relief:

1.  That the Court issue temporary and permanent injunctive relief against Counter-Defendants, and that Counter-Defendants, its officers, agents, representatives, servants, employees, attorneys, successors, and assignees, and all others in active concert or participation with Counter-Defendants, be enjoined and restrained from:

    a.  Publishing false and defamatory statements concerning Counter-Plaintiffs; and

    b.  Tortuously interfering with Counter-Plaintiffs' actual or prospective business relationships or expectancies.

2.  That this Court order and declare that Counter-Defendants have fraudulently induced Counter-Plaintiff Wave 3 Learning into entering into an agreement with Counter-Defendants in violation of Michigan law and

award damages stemming from Counter-Defendants improper tortious conduct;

3. That this Court order and declare that Counter-Defendant AVKO has breached its contract with Counter-Plaintiff Wave 3 Learning in violation of Michigan law and award damages stemming from Counter-Defendant's breach of contract;

4. That this Court order and declare that Counter-Defendants AVKO and McCabe have, through their concerted actions, been inequitably and unjustly enriched and award damages stemming from Counter-Defendants' unjust enrichment;

5. That this Court order and declare that Counter-Defendants AVKO and McCabe have, through their concerted actions, tortuously interfered with Counter-Plaintiff Wave 3 Learning's business relationships or expectancies and award damages stemming from Counter-Plaintiffs' tortious conduct;

6. That this Court order and declare that Counter-Defendants AVKO and McCabe have, through their concerted actions, defamed Counter-Plaintiff Wave 3 Learning and award damages stemming from Counter-Defendants' tortious conduct;

7. That this Court order and declare that Counter-Defendants AVKO and McCabe have, through their concerted actions, published false and defamatory statements concerning Counter-Plaintiff Wave 3 Learning that

constitute defamation per se and award damages stemming from Counter-Defendants' tortious conduct;

8.   That this Court order and declare that Counter-Defendants' actions have resulted in damages to Counter-Plaintiffs;

9.   That this Court award any and all monetary damages available under law, as will be proven at trial, for Counter-Defendants' conduct;

10. That this Court order Counter-Defendants to disgorge all ill-gotten gains, profits, and advantages;

11. That this Court award Counter-Plaintiffs' all of their costs, including reasonable attorneys' fees;

12. That this Court award pre- and post-judgment interest according to law; and

13. That this Court grant Counter-Plaintiffs all other relief to which it is entitled and such other or additional relief as is just and proper.

DATED this 24th day of August, 2011.

/s/ Mark G. Clark
TRAVERSE LEGAL, PLC
Mark G. Clark (P41652)
810 Cottageview Drive
Unit G-20
Traverse City, MI  49684

## CERTIFICATE OF SERVICE

Documents:

- *Defendants Thomas A. Morrow and Wave 3 Learning Inc. Answer to Plaintiff's Complaint and Counter Claim, and Demand for Jury*

I hereby certify that on August 24, 2011 the referenced document was electronically

filed with the court and served upon:

SUSAN PAYNE WOODROW
*Attorney for Plaintiff*
*suzywoodrow@hotmail.com*

via email;

Home School Holdings, Inc.
1153 So. Lee Street, Suite 198
Des Plaines, IL  60016

Home School, Inc.
1153 So. Lee Street, Suite 198
Des Plaines, IL  60016

via U.S. mail

/s/ Mark G. Clark_____
TRAVERSE LEGAL, PLC
Mark G. Clark (P41652)
810 Cottageview Drive
Unit G-20
Traverse City, MI  49684