UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | |
|---|---|
| AVKO Educational Research Foundation, Inc., and Donald J McCabe, author,<br><br>    Plaintiffs and Counter-Defendants ,<br><br>V<br><br>Thomas A. Morrow; Wave 3 Learning, Inc; Home School Holdings, Inc; Home School, Inc;<br><br>    Defendants and Counter-Plaintiffs. | Case no: 1:11-CV-13381-TLL-CEB<br><br>Hon. Thomas L. Ludington<br><br>Mag. Charles E. Binder |

Susan Payne Woodrow P29844
Susan Payne Woodrow JD, PC
*Attorney for Plaintiffs*
3631 Dorothy Lane
Waterford, MI 48329
PH: (248) 623-1818
FX: (248) 623-1811
suzywoodrow@hotmail.com

Mark G. Clark (P41652)
John Di Giacomo (P73056)
*Attorneys for Defendants Thomas A Morrow and Wave 3 Learning*
810 Cottageview Drive, Unit G-20
Traverse City, MI 49684
PH: (231) 932-0411
mark@traverselegal.com
john@traverselegal.com

**PLAINTIFFS' RESPONSE TO DEFENDANTS' AFFIRMATIVE DEFENSES (D25), PLAINTIFFS' ANSWERS TO DEFENDANTS' AMENDED COUNTERCLAIM (D25) PLAINTIFF'S AFFIRMATIVE DEFENSES TO DEFENDANTS' AMENDED COUNTERCLAIM
CERTIFICATE OF SERVICE**

Plaintiff responds to Defendants' Affirmative Defenses in their first amended answer and answers Defendants' first amended complaint and says as follows:

In responding to Defendants' Amended Affirmative Defenses, Plaintiffs' respond:

1. Denied. Copies of the copyrights only serve to provide prima facie evidence ownership of the copyright. Form 19 of the Fed. R. Civ. Proc. Appendix, does not require attaching copies of the certificates, only setting forth the date, class and number of the certificate. Regardless, copies of the certificates owned by Donald J. McCabe, author, have been provided to Defendants as Master Exhibits C-001 a-v to Doc 12, Plaintiffs' Motion for TRO and Preliminary Injunction During Litigation.

2. Denied. The complaint set forth with great specificity the particulars regarding the transfer of the copyrights to AVKO Educational Research Foundation, LLC (AVKO). Regardless, copies of the certificates have been provided to Defendants as Master Exhibits C-001 a-v to in Doc 12, Plaintiffs' Motion for TRO and Preliminary Injunction During Litigation.

3. Denied. A contract was executed between Thomas A. Morrow and Donald McCabe, for AVKO, selling the publishing rights. Wave 3 Learning, INC (W3L) did not exist at the time the publishing rights contract was signed. Regardless, W3L placed their copyright information on copies of AVKO/McCabe copyrighted materials from "The Works"

4. Denied. Plaintiffs did not commit fraud and said "fraud" is not pled with any facts.

5. Denied. W3L/Morrow printed AVKO literary works with a W3L copyright, infringing on AVKO/McCabe copyrights.

6. Denied. Morrow/W3L did not pay as agreed.

7. Denied. Morrow promised to pay in stock of HSH which was a lie when he signed resulting in promissory estoppel.

8. Defendant Morrow Made threats to Donald McCabe, Robert McCabe And Brian McCabe, all of which he intended would be shared among them.

9. Denied.

10. Denied. Defendants have operated their business, but had no right to operate any business based on Plaintiffs until the contract of 4 June 2010. Defendant must prove their allegations. Laches does not apply.

11. Denied. Defendants have operated their business, but had no right to operate any business based on Plaintiffs until the contract of 4 June 2010. Defendant must prove their allegations. The Doctrine of estoppel does not apply except to Defendants.

12. Denied. Defendants have operated their business, but had no right to operate any business based on Plaintiffs until the contract of 4 June 2010. Defendant must prove their allegations. The doctrines of acquiescence and waiver do not apply.

**Defendants PRAYER**

**1-5.** Plaintiffs request that the Court deny all Defendants requests and find for Plaintiffs as requested in their request for relief.

### III.   PLAINTIFFS' ANSWER TO DEFENDANTS' AMENDED COUNTERCLAIMS

Plaintiffs/Counter- Defendants answer Defendants/Counter-Plaintiffs amended counterclaims and state:

1. Admitted.

2. Admitted.

3. Admitted.

4. Admitted.

## JURISDICTION AND VENUE.

5. Admitted, but the jurisdiction includes all the amendments to the copyright acts, which provide for protections and extensions in addition to the original 1909 act.

6. Admitted.

7. Admitted as to jurisdiction only, but denied that Plaintiffs/Counter- Defendants have engaged in any tortuous actions.

8. Venue is proper because the parties agreed to this venue in the contract.

## FACTS

9. Admitted except that a significant part of their activities are not commercial and include other educational areas.

10. Admitted in part except that the prices range from FREE to $.95 to $359.90.

11. Admitted.

12. Admitted that Morrow has stated this.

13. Admitted that Morrow has stated this.

14. Denied. McCabe met with Morrow to discuss the possibility of Morrow, through Home School Holdings, Inc (HSH) or otherwise, of *publishing* "The Works".

15. Admitted, Exhibit C so states it was filed 13 October 2009.

16. Admitted that HSH/Morrow entered into negotiations to publish "The Works", not to purchase any other rights.

17. Denied. Neither McCabe nor AVKO represented that they "regularly" got annual sales of $300,000 for "The Works".

18. Admitted, except the discussions were not that detailed.

19. Denied as untrue. The contract clearly states USA and Canada *PUBLISHING RIGHTS* with a total sales price of $600,000 in two payments of $50,000 + $250,000 stock that could be traded, the first payment was due cash at closing and stock shortly after closing and the second payment after the publisher realized $300,000 in gross revenues.

20. Denied as twisted. The contract clearly states USA and Canada *PUBLISHING RIGHTS* with a total sales price of $600,000 in two payments of $50,000 + $250,000 stock that could be traded, the first payment was due cash at closing and stock shortly after closing and the second payment after the publisher realized $300,000 in gross revenues. The publications were never acquired, only the rights to publish (reprint, distribute and sell).

21. Admitted.

22. Denied. AVKO retained the right to sell on the website and thro community sales.

23. Denied and irrelevant. The final terms were negotiated and agreed to by both parties to the contract. Negotiations are irrelevant and excluded by the parole evidence rule. That McCabe wanted $1,000,000 for the publishing rights is equally irrelevant. However, Morro represented that HSH was or would be a public company and the shares tradable on the OTC and NASDAQ markets. However, Defendants/Counter-Plaintiffs Exhibit D was not signed by Morrow thus was rejected and the actual agreement between the parties is represented in Plaintiffs/Counter-Defendants Master Exhibit F.

24. Leave Defendants/Counter-Plaintiffs to their proofs. However, this fact is irrelevant as it is believed that HSH withdrew its SEC filings in November, 2009.

25. Admitted that Morrow made one sixth of the initial payment due in a cashiers' check.

26. Admitted. But, Exhibit F is the Morrow affidavit, not the First subscription agreement.

27. Admitted with exception that the First subscription required McCabe to pay for $.05 for each share, thus Plaintiffs/Counter- Defendants would be required to pay $12,500 in a check sent to Morrow instead of selling those shares for $250,000, cannot ever sell them, did not receive the Company's 10-K for 2010 and would be required to make false representations in that agreement.

28. Admitted. But, Exhibit F is the Morrow affidavit, not the Second subscription agreement. The Second subscription represents that the acquisition value is $.05 for each share, thus Plaintiffs/Counter- Defendants would have stock "worth" $12,500, but could not sell those shares for $250,000, cannot ever sell them, did not receive the Company's 10-K for 2010 and would be required to make false representations in that agreement.

29. Denied. The shares offered were not shares that "would be tradable in accordance with SEC regulations on, first, the OTC market and then the NASDAQ when the Company moves its listing".

30. Admitted.

31. Admitted.

32. Denied. Morrow failed to inform McCabe that the IPO was becoming unworkable. If it became unworkable between 4 June 2010 and 17 June 2010, Morrow had a duty to inform Plaintiffs/Counter- Defendants of that fact. Leave Defendants/Counter-Plaintiffs to their proofs regarding the SEC disclosure violations.

33. Denied. It is believed that HSH was not informed that a contract had been signed.

34. Admitted

35. Denied. There was no consideration thus no contract.

36. Admitted that Morrow requested a replacement for the executed publishing rights contract. Denied as to the remaining allegations and leave Defendants/Counter-Plaintiffs to their proofs.

37. Denied. Exhibit H is the proposed subscription agreement requiring Plaintiffs/Counter- Defendants to pay for the HSH Shares and to misrepresent to the Securities and Exchange Commission in a formal document and is *not* an e-mail.

38. Denied. Exhibit I is the proposed subscription agreement requiring Plaintiffs/Counter- Defendants to pay for the HSH Shares and to misrepresent to the Securities and Exchange Commission in a formal document and is *not* an e-mail. However, it is admitted that such an e-mail was sent.

39. Admitted that W3L operated under the Publishing Rights Agreement (Defendants/Counter-Plaintiffs Exhibit of 4 June 2010, and that HSH, Morrow, and/or Morrow breached major portions of that agreement, to with .

40. Denied. Leave Defendants/Counter-Plaintiffs to their proofs.

41. Denied. Leave Defendants/Counter-Plaintiffs to their proofs.

42. Denied. Leave Defendants/Counter-Plaintiffs to their proofs.

43. Denied.  Leave Defendants/Counter-Plaintiffs to their proofs, but may be true.

44. Denied.  Leave Defendants/Counter-Plaintiffs to their proofs.  Further, the item was merely an accounting adjustment in a effort to report fairly.  Exhibit J is not the EZ 990, but is W3L incorporation information.

45. Denied.  Leave Defendants/Counter-Plaintiffs to their proofs.

46. Admitted.

47. Denied.  The Publications Rights Agreement was not inartfully drafted and did not speak to the issue of trademark rights because they were never intended to be available.  Admitted that W3L inartfully attempted to obtain the trademarks under a ruse.  Denied further in that Exhibit K is an E-mail unrelated to the "trademark issue".  However, AVKO would *never* relinquish its copyrights or trademarks.

48. Denied.  Exhibit L. is not the "Trademark and Copyright Agreement" e-mail.  However, agreed that AVKO finally asked Morrow/w3l to pay and perform according to the Publications Rights Agreement.

49. Denied.  Leave Defendants/Counter-Plaintiffs to their proofs.

50. Admitted.

51. Admitted.  Morrow/W3L breached the executed Publications Rights Agreement.

52. Denied.  Copies were never given to AVKO.  AVKO had to purchase them.  Denied as to Amazon because once control was given to Defendants/Counter-Plaintiffs, they were responsible for management of the site.  Denied as to the request for support to protect the copyrights and trademarks, Defendants/Counter-Plaintiffs were attempting to use that purported "assistance" as a ruse to obtain ownership to the copyrights and trademarks owned by Plaintiffs/Counter- Defendants

53. Denied. Exhibit R deals with the Desk copies and Defendants/Counter-Plaintiffs ruse to obtain ownership of the copyrights and trademarks.

54. Admitted. AVKO continued to perform according to the Publications Rights Agreement.

55. Admitted. Except that it was intended that full payment of the $250,000 equivalency to the stock be made.

56. Admitted.

57. Denied. Leave Defendants/Counter-Plaintiffs to their proofs. Why is not the letter an exhibit?

58. Denied. Exhibit U is the response letter by Morrow affirming his belief that the Publications Rights Agreement is a valid agreement with him and AVKO.

59. Denied. Leave Defendants/Counter-Plaintiffs to their proofs.

60. Denied in that exhibit V is a letter from counsel for Defendants/Counter-Plaintiffs.

61. Admitted.

62. Admitted.

**COUNT I - FRAUD IN THE INDUCEMENT**

63. Responses are repeated.

64. Denied. Leave Defendants/Counter-Plaintiffs to their proofs.

65. Denied. Leave Defendants/Counter-Plaintiffs to their proofs.

66. Denied. Leave Defendants/Counter-Plaintiffs to their proofs.

67. Denied. Leave Defendants/Counter-Plaintiffs to their proofs.

68. Denied. Leave Defendants/Counter-Plaintiffs to their proofs.

69. Denied. Leave Defendants/Counter-Plaintiffs to their proofs.

70. Denied. Leave Defendants/Counter-Plaintiffs to their proofs.

71. Denied. Leave Defendants/Counter-Plaintiffs to their proofs. No one can promise what another entity will do.

72. Denied. Leave Defendants/Counter-Plaintiffs to their proofs. Plaintiffs/Counter-Defendants have no way of knowing the intent of another.

73. Denied. Leave Defendants/Counter-Plaintiffs to their proofs. Inquisicorp does not like the Morrow modification to the products but would continue to buy the original Sequential Spelling, if offered.

74. Denied. Leave Defendants/Counter-Plaintiffs to their proofs.

75. Denied. Leave Defendants/Counter-Plaintiffs to their proofs.

76. Denied. Leave Defendants/Counter-Plaintiffs to their proofs.

**COUNT II – BREACH OF CONTRACT/IMPLIED WARRANTY OF TITLE**

77. Responses are repeated.

78. Denied. Leave Defendants/Counter-Plaintiffs to their proofs. However, AVKO is primarily an educational entity and not a merchant.

79. Denied. Leave Defendants/Counter-Plaintiffs to their proofs.

80. Denied. Leave Defendants/Counter-Plaintiffs to their proofs.

81. Denied. Leave Defendants/Counter-Plaintiffs to their proofs. Admitted that Exhibit G is an executed Publications Rights Agreement.

82. Denied. Leave Defendants/Counter-Plaintiffs to their proofs.

83. Denied.

84. Denied.

### COUNT III – UNJUST ENRICHMENT

85. Responses are repeated.

86. Denied. Leave Defendants/Counter-Plaintiffs to their proofs.

87. Denied.

88. Denied.

89. Denied.

90. Denied.

91. Denied. Defendants/Counter-Plaintiffs received the digital material with which to publish all 48 volumes of "The Works" and then affixed their copyright in infringement. And generated revenue from selling 25% of the volumes of "The Works".

### COUNT IV - DEFAMATION

92. Responses are repeated.

93. Denied. Leave Defendants/Counter-Plaintiffs to their proofs.

94. Denied. Leave Defendants/Counter-Plaintiffs to their proofs.

95. Denied. Leave Defendants/Counter-Plaintiffs to their proofs.

96. Denied. Leave Defendants/Counter-Plaintiffs to their proofs.

97. Denied. Leave Defendants/Counter-Plaintiffs to their proofs.

**98.** Denied. Leave Defendants/Counter-Plaintiffs to their proofs.

### COUNT V – DEFAMATION PER SE

99. Responses are repeated.

100. Denied. Leave Defendants/Counter-Plaintiffs to their proofs.

101. Denied. Leave Defendants/Counter-Plaintiffs to their proofs.

102. Denied. Leave Defendants/Counter-Plaintiffs to their proofs.

103. Denied. Leave Defendants/Counter-Plaintiffs to their proofs.

104. Denied. Leave Defendants/Counter-Plaintiffs to their proofs.

105. Denied. Leave Defendants/Counter-Plaintiffs to their proofs.

### COUNT VI – TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP OR EXPECTANCY

106. Responses are repeated.

107. Denied. Leave Defendants/Counter-Plaintiffs to their proofs. Fails for lack of specificity and lack of facts.

108. Denied. Leave Defendants/Counter-Plaintiffs to their proofs.

109. Denied. Leave Defendants/Counter-Plaintiffs to their proofs.

110. Denied. Leave Defendants/Counter-Plaintiffs to their proofs.

### COUNT VII – PROMISSORY ESTOPPEL

111. Responses are repeated.

112. Denied. Leave Defendants/Counter-Plaintiffs to their proofs.

113. Denied. Leave Defendants/Counter-Plaintiffs to their proofs.

114. Denied. Leave Defendants/Counter-Plaintiffs to their proofs.

115. Denied. Leave Defendants/Counter-Plaintiffs to their proofs. However, that was an expectation of performance under the executed Publications Rights Agreement and does not amount to reliance, but is performance. Besides "The Works" was not improved.

116. Denied. Leave Defendants/Counter-Plaintiffs to their proofs. Defendants/Counter-Plaintiffs were harmed by their failure to run the business

competently. Plaintiffs/Counter- Defendants performed their promise to permit "The Works" to be published by Defendants/Counter-Plaintiffs.

117. Denied. There is no promise that Plaintiffs/Counter- Defendants made which has not been performed under any theory of "the contract". It is Defendants/Counter-Plaintiffs who have failed to perform.

**AFFIRMATIVE DEFENSES**

Plaintiffs/Counter- Defendants set forth their affirmative defenses and say:

118. Plaintiffs/Counter- Defendants made no additional promises beyond that set forth in the executed Publications Rights Agreement. Therefore, there is no "promise to be enforced.

119. Defendants/Counter-Plaintiffs alleged "detrimental reliance" is merely his performance of publishing pursuant to the executed Publications Rights Agreement, whether the original agreement or the presumed "status quo" agreement

120. Defendants/Counter-Plaintiffs alleged damages are not based upon any unfulfilled promise of Plaintiffs/Counter- Defendants, but of his own inability to properly market the materials and garner revenue because, *inter alia,*

   a. Defendants/Counter-Plaintiffs chose to publish only about 25% of the volumes, automatically reducing possible revenue

   b. Defendants/Counter-Plaintiffs chose not to advertise in the multiple publication that AVKO had, significantly limiting exposure and automatically reducing possible revenue

   c. Defendants/Counter-Plaintiffs chose not to sell to individuals through their website, automatically reducing possible revenue

    d.    Defendants/Counter-Plaintiffs have limited their website such that they automatically reduced possible revenue.

121. Defendants/Counter-Plaintiffs mistakenly thought that they could do a better marketing job than Plaintiffs/Counter- Defendants to their own detriment and are the architect of their own damages.

122. Defendants/Counter-Plaintiffs have breached the executed Publications Rights Agreement by failing to publish all "The Works" as agreed.

123. Defendants/Counter-Plaintiffs have breached the "status quo" agreement, if one exists, by failing to publish all "The Works" as agreed.

124. Defendants/Counter-Plaintiffs have breached the executed Publications Rights Agreement by failing to pay the first payment due in stock worth $250,000.

125. Defendants/Counter-Plaintiffs have breached the "status quo" agreement by failing to pay the first payment dues in stock worth $250,000.

126. Defendants/Counter-Plaintiffs breached the executed Publications Rights Agreement by failing to provide gratis desk copies of "The Works" as published. This failure was necessary to conceal the copyright infringement.

127. Defendants/Counter-Plaintiffs breached the "status quo" Agreement by failing to provide gratis desk copies of "The Works" as published. This failure was necessary to conceal the copyright infringement.

128. As a result of the breach by Defendants/Counter-Plaintiffs of the executed Publications Rights Agreement, the right to publish reverts to Plaintiffs/Counter-Defendants.

129. As a result of the breach by Defendants/Counter-Plaintiffs of the "status quo" Agreement, the right to publish reverts to Plaintiffs/Counter- Defendants.

WHEREFORE, Plaintiffs/Counter- Defendants pray this Court will enter Judgment against Defendants/Counter-Plaintiffs that

A. Defendants/Counter-Plaintiffs have breached their agreement with Plaintiffs/Counter- Defendants,

B. The publishing rights immediately revert to Plaintiffs/Counter- Defendants pursuant to the contract,

C. Defendants/Counter-Plaintiffs be assessed copyright infringement damages as follows:

   a. $100 for each and every volume which contains a copyright infringement of any kind by Wave 3 Learning, Inc, and $2,500 for the Wave 3 Learning, Inc. website false statement regarding owning copyrights and worldwide rights to "The Works",

   b. or, turn over the volumes for impoundment and destruction,

   c. or, place a label containing the legal copyright of AVKO to cover the false copyright of Wave 3 Learning, Inc and de liver the volumes to AVKO to sell, with Wave 3 Learning, Inc to receive 5% of the final sale price as a final disposition of any inventory in their possession,

   d. and sign over to AVKO all rights in the i-pad apps, and other electronic developments as damages for their infringement.

D. Defendants/Counter-Plaintiffs or their assigns, agents, be permanently enjoined from publishing, selling, distributing, advertising "The Works" or any similar materials,

teaching or the like that may in any way, be related to the premises of sequential spelling concepts in any way whatsoever, without limitation.

E. Deny Defendants/Counter-Plaintiffs prayer in its entirety.

Respectfully submitted,

/s/ Susan Payne Woodrow
Susan Payne Woodrow P29844
Susan Payne Woodrow JD, PC
*Attorney for Plaintiffs*
3631 Dorothy Lane
Waterford, MI 48329
PH: (248) 623-1818
suzywoodrow@hotmail.com
P29844

## CERTIFICATE OF SERVICE

Susan Payne Woodrow certifies that she served the below interested parties by electronic filing with the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record set forth below:

Mark G. Clark (P41652)
John Di Giacomo (P73056)
*Attorneys for Defendants Thomas A Morrow and Wave 3 Learning*
810 Cottageview Drive, Unit G-20
Traverse City, MI 49684
PH: (231) 932-0411
mark@traverselegal.com
john@traverselegal.com

Home School Holdings, Inc
David Nicholson
By e-mail to dave@ppcplanning.com

/s/ Susan Payne Woodrow
Susan Payne Woodrow