## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

AVKO EDUCATIONAL RESEARCH
FOUNDATION, a Michigan Corporation,
Donald J McCabe, author, individually          Case No.: 1:11-cv-13381-TLL-CEB
     Plaintiff,                                Hon: Thomas L. Ludington

v.

THOMAS A. MORROW, an individual,
WAVE 3 LEARNING, INC.;
     Defendants.

---

| | |
|---|---|
| SUSAN PAYNE WOODROW (P29844) | MARK G. CLARK (P41652) |
| *Attorney for Plaintiff,* | JOHN DI GIACOMO (P73056) |
| *AVKO EDUCATIONAL RESEARCH* | *Attorneys for Defendant Thomas A.* |
| *FOUNDATION, a Michigan Corporation,* | *Morrow and Wave 3 Learning, Inc.* |
| *and DONALD J. MCCABE, author* | 810 Cottageview Drive, Unit G-20 |
| 3631 Dorothy Lane | Traverse City, MI 49684 |
| Waterford, MI, 48329 | (231) 932-0411 |
| (248) 760-1818 | mark@traverselegal.com |
| suzywoodrow@hotmail.com | john@traverselegal.com |

---

### PLAINTIFF'S FIRST AMENDED COMPLAINT

There is no other pending or unresolved civil action arising out of the transactions and occurrences alleged in the complaint.

NOW COMES the Plaintiff, AVKO Educational Research Foundation, Inc. (AVKO) by and through its attorney, Susan Payne Woodrow JD, PC and for its Complaint states as follows:

### NATURE OF THE ACTION

Basically, this is an action for breach of a contract to publish, where the contract was induced by misrepresentation and fraud by Defendant, Thomas Morrow, who then attempted to replace the existing contract with a less beneficial contract. When Plaintiff refused to

agree to less favorable terms and having already performed fully, Plaintiff requested that Defendant "maintain the status quo" and perform according to the express contract. However, after Plaintiff performed fully, Defendants breached the contract.

Unbeknownst to Plaintiff, the contract was based on misrepresentation of commission and omission of material facts which, had Plaintiff been fully apprised, Plaintiff would not have entered into the contract. Therefore, because of the material misrepresentations, the contract is voidable.

This action is also filed because Thomas Morrow, either individually, or in concert with Lisa Morrow, or through his alter ego, Wave 3 Learning, Inc. has and continues, to attempt to usurp the ownership of copyrights owned by AVKO in a compilation of literary volumes called "The Works". Plaintiff declares that they own the copyrights, that Defendant Morrow has breached the contract, that the contract is voidable due to material misrepresentations, the publishing rights revert to Plaintiff, and that Plaintiff is entitled to damages not only for breach, but also for intentional infliction of emotional distress.

## JURISDICTION AND VENUE

1. Jurisdiction exists because:
   a. The amount in controversy is in excess of $75,000.00 and otherwise within the jurisdiction of this Court.
   b. This is an actual case and controversy under U.S. Const. Article III § 2,
   c. Diversity exists under 28 USC § 1332
   d. A claim exists under the Declaratory Judgment Act, 29 USCA 2201 (a), et seq.

2.  This Court has supplemental Jurisdiction under 28 USC §1367 (a) because of the integral interrelationship of the State breach of contract claim.

3.  Venue is proper in Saginaw County because:

   a.  AVKO is a resident of Saginaw County,

   b.  The contract was made in Saginaw County,

   c.  The parties contractually agreed to litigate in Saginaw County Court and apply Michigan Law, therefore this venue is proper. See, Exhibit A, 6/4/2010, contract,

   d.  Further venue is proper in this judicial district under 29 USCA §1391 and §1400(a).

4.  Defendants'' conduct has established enough contacts for long arm jurisdiction to lie for Thomas Morrow and Wave 3 Learning, Inc.

## **PARTIES**

5.  Plaintiff, AVKO Educational Research Foundation, (AVKO) is a Michigan non-profit corporation, authorized and doing business in the County of Saginaw, State of Michigan with an address at 3084 Willard Road, Birch Run, Saginaw County, Michigan, 48415-9404.

6.  AVKO is a real party in interest and has a pecuniary interest in the outcome.

7.  Upon information and belief, Thomas Morrow (Morrow)

   a.  Resides in Arlington Heights, IL.

   b.  Is or was Chairman and CEO of Home School Holdings, Inc.

   c.  Is or was President of Wave 3 Learning, Inc..

    d.  Is or was an officer of Home School, Inc.

8.  Wave 3 Learning, Inc, is incorporated under the laws of Nevada, with their primary offices in Arlington Heights IL.

9.  Donald J. McCabe (McCabe) is the Author and original copyright holder of the basic Sequential Spelling © literary works which he assigned to AVKO.. Thereafter, he authored other literary works while employed with AVKO.  The compilation of derivative manuscripts are referred to as "The Works.

10. Mr. McCabe has been individually injured by the intentional infliction of emotional distress which Morrow knew, or should have known, and resides at 3084 Willard Road, Birch Run, Saginaw County, Michigan, 48415-9404

## STATEMENT OF CASE AND FACTS

       In the early 1970's Don McCabe discovered that the reason so many of his students could not read nor spell was related to what they were not being taught, that is, the consistent phonic spelling patterns of the English language. He began the arduous task of assembling these patterns which had never been done before as well attempting to find methods with which anyone could teach a dyslexic to read and spell.

       He copyrighted his first works, Word Families, Word Families in Sentence Context and Sequential Spelling under his own name. Shortly after he formed the AVKO Educational Research Foundation, Inc., (AVKO) he assigned all his copyrights to those literary works to the foundation.  Thereafter, all the works that he created were copyrighted by AVKO. He had hoped that as an 501(c)3 organization, AVKO would be in a better position receive research grants from large corporations, philanthropic foundations, or governmental agencies.

Also, he thought that the educational establishment would be more likely to utilize the AVKO techniques and literary works if it wasn't a profit oriented organization. In order to help fund the foundation, and to spread the system, AVKO began marketing the system. By 2009 AVKO had 36 distributors as well as a website that did more than just sell books - it was giving all kinds of free information.

Because Don McCabe was aging and had health issues, he needed to be relieved of the pressures of doing research, free tutoring, and free tutor training as well as marketing he began to seek a publisher. There were offers that AVKO turned down such as those from Mott Media and The Texas Reading Institute.

In the spring of 2009, Mr. McCabe met Thomas A. Morrow at a trade show for the home school industry.  Mr. McCabe was seeking additional distributors while Mr. Morrow was looking for companies he could swallow up.  When Mr. McCabe chose to sell the publishing rights, he wanted to associate with a company that would not purchase the publishing rights to "the Works" for the purpose of eliminating a competitor, but who would perpetuate this very effective system.

When they met, Mr. Morrow was the chief executive officer of Home School Holdings, Inc., (HSH) a Florida corporation.  Mr. Morrow was in the process of attempting to get HSH registered through the Securities and Exchange Commission (SEC) in order to make an initial public offering (IPO) to raise additional capital beyond the 1.8 million he had already raised through sales of stock and loans.

In September, 2009 Mr. Morrow and Mr. McCabe began to exchange e-mails and negotiate a contract for HSH to publish "the Works".  Mr. Morrow drafted the basic contract with some alterations based upon communication and editing by Mr. McCabe.  As a former

English teacher, Mr. McCabe insisted upon a plain language contract.  Finally, the parties signed the agreement on June 4, 2010 (Contract).  As early as September 2009, Mr. Morrow realized that Mr. McCabe was having significant memory problems.  He capitalized on this infirmity. Mr. Morrow made multiple misrepresentations by commission or omission of material facts in order to induce Mr. McCabe to believe that he was safe to sign a contract on behalf of AVKO with Mr. Morrow of HSH.   Some of those misrepresentations that he knew were false, or that he concealed are:

    a.   HSH had income in the low millions

    b.   He concealed that HSH had accumulated deficit in the millions

    c.   He was a market maker

    d.   As a serial entrepreneur Morrow has built businesses literally from nothing as the "ideator" and founder

    e.   He was the Michael Jordan of Army Reconnaissance

    f.   He had created several startup corporations successfully

    g.   He was a Fortune 500 executive

    h.   HSH would close with AVKO when Morrow knew HSH was not going to close with AVKO at all.

    i.   AVKO and HSH closed their contract on December 2009 and AVKO agreed to a note for the cash and stocks.

    j.   He signed the June 4, 2010 contract with AVKO as CEO of HSH and on behalf of HSH.

    k.   The IPO was nearly complete and would happen.

    l.   He intended to have AVKO for his own business

m.  He had no income from HSH, contrary to his representations to the SEC

n.  He filed bankruptcy.  Morrow indicated in an early e-mail that the contract was between the two of them, inducing reliance on himself, as a man, making his personal matters important.

o.  He and HSH were sued by Tangiers Company, who was to participate in the IPO, and Tangiers received a Judgment against him.

p.  He misrepresented to the SEC on 01/05/2010 when he filed a Form 8-K document with the SEC indicating that on 12/17/2009 HSH had acquired the right to publish "The Works" of AVKO wfor $300,000  in the form of a 450,000 note of 30 days term and $250,000shares @$.05 (5,000,000 shares) and attached unsigned documents.  Subsequently he informed the HSH board that they had bought nothing from AVKO. (I.e., different stories for different folks.)

q.  He later told Mr. McCabe that he needed to sign a subscription agreement in order to receive his shares of stock pursuant to the contract of June 4, 2010.  This is a material fact that should have been disclosed.

r.  HSH could have issued treasury shares to Mr. McCabe after the IPO occurred thus the subscription agreement was not necessary.

s.  He resigned from HSH and divested his HSH stock.

t.  When he signed for HSH, he knew that neither HSH nor he could pay the additional $550,000 he promised in negotiations and in the contract.

Morrow misrepresented himself, his abilities, his worth and expectations of his company, Home School Holdings, Inc. (HSH) and lured McCabe into signing a non-

exclusive publishing license with him on behalf of AVKO on June 6, 2010 (the Contract). See, Master Exhibit F.

After the voidable contract was signed, Morrow immediately attempted to modify the contract be asking McCabe to sign a subscription agreement for the shares, although that clearly was not part of the contract nor ever negotiated between the parties.

Morrow asserted that the contract was "really between you and me" and that he "intended to sign as an individual". The only performance required of AVKO was to provide access to the media to facilitate the volumes being reproduced for publishing as well as making available copies of volumes in their possession to be purchased at cost. This AVKO did immediately upon signing the contract on June 4, 2010. The full contract price was $600,000. Morrow/HSH was to provide cash $50,000, which he did, and HSH shares "tradable" on a public exchange valued at $250,000 for the first of two payments.  A second set of $50,000 cash and $250,000 of stock was due later.

AVKO performed fully, by allowing Morrow to publish, as is confirmed by their IRS 990-EZ where they indicated that the sale of the nonexclusive publishing rights reduced the value of the copyrights.

Within 2 weeks of signing the contract, Morrow intentionally repudiated the contract by when he intentionally resigned from HSH and sold his 143,000,000 shares back to the company for $1,000.  He never offered to transfer any percentage of those shares to AVKO, nor did he reveal that he had resigned and sold his shares. This act indicates that his breach was willful and intentional as he had made it absolutely impossible to perform. This conduct was a repudiation of the contract. However, Morrow knew that there could be no IPO but had concealed that from AVKO. Next, after that concealed breach, Morrow attempted to

negotiate a new contract with AVKO and his new corporate alter ego, Wave 3 Learning, Inc. (W3L). Instead of agreeing to a new contract, AVKO requested that Morrow begin to perform and publish according to the contract.

Within a few months, the first instance of copyright violation occurred when Morrow put W3L copyright in place of AVKO's on AVKO'S literary works. When McCabe asked Morrow to cease the infringement, he believed that Morrow did, but subsequently discovered additional violations which AVKO believes are criminal violation of the copyright act.

Then Morrow tried to get AVKO to sign over the copyrights to him, McCabe refused and McCabe, for AVKO, asked for full payment pursuant to the contract. It was not forthcoming. This established the complete breach of Morrow. In the 13 months between the June 4, 2010 contract and initiating litigation, Morrow has cited to sections of the June 4, 2010 on multiple occasions regarding performance and obligations, thus affirming the intent of the signatories.

Mr. McCabe, then AVKO owned the copyrights to Sequential Spelling © and the derivative works called "The Works"© since 1975. Hereinafter, "The Works" refers to all of the literary works authored by Mr. McCabe for his reading program and numbers approximately 49 books in the curricula and instructional aid publications (both paper copy and electronic copy) that include, by example, are teaching aids, books, teachers manuals, testing books, workbooks, reading aids, writing aids, spelling aids, grammar aids and the like.

## <u>COUNT 1 - COPYRIGHT INFRINGMENT</u>

11.     Plaintiffs repeat and reallege each and every paragraph above and below as if specifically pleaded here.

12.     In 1975, Donald J. McCabe wrote a series of books to teach reading entitled "Sequential Spelling"©.  The books are original literary works that can be copyrighted under United States law.

13.     On November 9, 1975 the copyrights estimated worth to recreate was $992,500.

14.     The books were further developed into a system of books with a curricula to teach reading and literacy called "The Works" consisting of nearly 50 books in "The Works".  See, Exhibit A, 6/4/2010 Voidable Contract with Ex A lidting "The Works".

15.     Beginning in 1975 Mr. McCabe registered copyrights for various literary manuscripts related to "Sequential Spelling" : (See, Master Exhibit C-002 a-v, attached)

Date Class Number

a.     03/06/75 A 611642
b.     03/06/75 A 611741
c.     03/06/75 A 611728
d.     04/04/75 A 623254
e.     12/29/75 A 705775
f.     12/29/75 A 705776
g.     12/29/75 A 711306
h.     12/29/75 A 716101
i.     12/29/75 A 716102
j.     12/29/75 A 716103
k.     12/29/75 A 716104
l.     12/29/75 A 716105
m.     12/29/75 A 716106
n.     12/29/75 A 716107
o.     12/29/75 A 716108
p.     01/10/77 A 815785

q.    01/10/77 A 815786
r.    01/10/77 A 815787
s.    01/10/77 A 815788
t.    01/10/77 A 815789
u.    01/10/77 A 848352
v.    12/27/77 A 928855

16.    On 02/17/76 Mr. McCabe transferred his copyrights to AVKO at vol. 1575 page 141 - 144.

17.    Since the late 1970"s when the copyrights were issued, Plaintiff continuously published all copies of "The Works" in compliance of the copyright laws and has remained the sole owner of the copyrights.

18.    After the copyright was issued, the defendant infringed the copyright by publishing and selling or licensed for publication books from the compilation "The Works", with the copyright of Wave 3 Learning, Inc. Because of the large number pages of *known* volumes violating AVKO"s copyright, only excerpts of *known* copyright violations are attached:

19.    Morrow published AVKO copyrighted materials with W3L copyright which was not contemplated nor negotiated in the voidable 6/4/2010 contract, and W3L had no publishing contract with AVKO, See Exhibit B, Infringements, to wit:

a.    "Sequential Spelling 1" with a fraudulent Copyright by W3L in 1975, 1995, 2003, 2006, and all references to AVKO were replaced by W3L so that it looks like Mr. McCabe"s wife, Ann, son Robert, and daughter, Linda, were associated with W3L for years. The W3L © displayed is for years before W3L was incorporated. See, 1-a, AVKO excerpts, 1-b W3L © excerpts showing infringement.

b. Defendants infringed by publishing AVKO Sequential Spelling 1 Teacher's Guide with a W3L copyright. See, 2-a, AVKO©, 2-b W3L© excerpts showing infringement.

c. Defendants infringed by publishing AVKO Sequential Spelling 3 with a W3L copyright. Excerpts See, 3-a, AVKO ©, 3-b W3L© excerpts showing infringement.

d. Defendants infringed by publishing AVKO Individualized Keyboarding with a W3L copyright. Excerpts See, 4-a, AVKO ©, 4-b W3L© excerpts showing infringement.

e. Defendants infringed by publishing AVKO Sequential Spelling for Adults with a W3L copyright. Excerpts See, 5-a, AVKO ©, 5-b W3L© excerpts showing infringement.

f. Defendants infringed by publishing AVKO *If it is to be, it is up to me to do it!* with a W3L copyright as *It is up to me!*. Excerpts See, 6-a, AVKO ©, 6-b W3L© excerpts showing infringement.

g. Defendants infringed by publishing AVKO Student Response Book for Sequential Spelling with a W3L copyright. Excerpts See, 7-a, AVKO ©, 7-b W3L© infringement.

20. Plaintiff notified Defendants in writing that they were violating his copyright.

21. Defendants knew that the copyrights belonged to AVKO when they tried to negotiate a purchase of the copyrights for no consideration. When AVKO rejected the offer, Defendants proceeded to infringe the copyrights again.

22.     Defendants continue to infringe the copyrights by continuing to publish and sell the infringing materials in violation of the copyright, and further has engaged in unfair trade practices and unfair competition in connection with its publication and sale of the infringing materials, thus causing irreparable damage to Plaintiffs.

      a.  Therefore, Plaintiff demand that Defendant and Defendant"s agents be enjoined from disposing of any copies of the Defendants book by sale or otherwise;

      b.  Defendants account for and pay as damages to the Plaintiff all profits and advantages gained from the unfair trade practices and unfair competition in selling Defendants books, and all profits and advantage gained from infringing the Plaintiff copyrights

      c.  Defendants deliver for impoundment all copies of "The Works" in the

      d.  Defendants be ordered to pay the Plaintiff interest, costs and reasonable attorneys" fees; and Plaintiff be awarded any other just relief.

## COUNT 2 - FRAUD AND MISREPRESENTATION IN THE INDUCEMENT

23.     Plaintiffs repeat and reallege each and every paragraph above and below as if specifically pleaded here.

24.     Every contract imposes upon each party a duty of good faith, requires honesty in fact, fair dealing in its performance and its enforcement. Defendant Morrow was dishonest in fact in the making of the contract and in his subsequent conduct regarding the contract, his performance and ancillary matters. Some, but not all misrepresentations include the following:

      a.  HSH had income in the low millions

b.  He concealed that HSH had accumulated deficit in the millions

c.  He was a market maker

d.  As a serial entrepreneur Morrow has built businesses literally from nothing as the "ideator" and founder

e.  He was the Michael Jordan of Army Reconnaissance

f.  He had created several startup corporations successfully

g.  He was a Fortune 500 executive

h.  HSH would close with AVKO when Morrow knew HSH was not going to close with AVKO at all.

i.  He signed the June 4, 2010 contract with AVKO as CEO of HSH and on behalf of HSH which was not true because he intended that he assume the publishing duties.

j.  The IPO was nearly complete and would happen.

k.  He concealed that he intended to have AVKO for his own business

l.  He concealed that he had no income from HSH, contrary to his representations to the SEC,

m.  He filed bankruptcy.  Morrow indicated in an early e-mail that the contract was between the two of them, inducing reliance on himself, as a man, making his personal matters important.

n.  He and HSH were sued by Tangiers Company, who was to participate in the IPO,

o.  Tangiers received a Judgment against him.

p.  He misrepresented to the SEC on 01/05/2010 when he filed a Form 8-K document with the SEC indicating that on 12/17/2009 HSH had acquired the right to publish

"The Works" of AVKO for $300,000 in the form of a $50,000 note of 30 days term and $250,000 shares valued at @$.05 (5,000,000 shares) and attached unsigned documents.

q. When Morrow signed the voidable contract he knew that HSH could not complete the transaction,

r. A few days after June 4, 2010, and 6 months after certifying on 1/5/2010 with the SEC that HSH had bought AVKO publishing rights for a $50,000 note and stock, . Morrow informed the HSH board that they had bought nothing from AVKO. (I.e., different stories for different folks.)

25.   The material assertions of misrepresentation and the material concealment of facts are sufficient to make the contract voidable.

26.   Relying upon Morrow's misrepresentations that AVKO had entered into a contract with HSH, a company with annual earnings in the low millions, and headed up by a fortune 500 executive, promptly after signing the contract, AVKO, in good faith, performed as fully as possible by:

a. providing the literary material by giving MORROW the computer documents for "The Works" on discs,

b. providing the art work for the materials and for advertising in magazines, e-mail blasts and his website,

c. accepting a token down payment of $50,000.00 on a $600,000.00 purchase of publishing rights (not to be confused with copyrights) limited to the US and Canada,

d.  providing the names of the home school magazines and/or their contact persons with whom AVKO advertised,

e.  stopping AVKO's advertising which directs readers to its own website so as NOT to compete,

f.  providing access to all AVKO's onsite promotional materials to help Morrow develop a website which homeschoolers could find from advertisements in home school magazines,

g.  providing the names of AVKO's 36 established distributors

h.  notifying Amazon and all other distributors that HSH was now the new publisher, and

i.  providing the use of AVKO employees for special requests not in the contract, which cost AVKO about $20,000.00).

27.     Immediately after signing the contract, Plaintiffs performed fully which incurred damages for employee costs beyond the contract requirements and for forfeiting the right to sell causing AVKO to lose profits for 2010, 2011, and 2012 as well as incur legal fees and costs of litigation.

28.     Defendants fault militates towards an award of damages related to the significance of the fault on the part of Defendant.

## COUNT 2 - BREACH OF CONTRACT

29. Plaintiffs repeat and reallege each and every paragraph above and below as if specifically pleaded here.

30. Subsequent to the signing of the voidable contract on 6/4/2010, after Plaintiffs fully performed under the contract,  and before Plaintiffs knew of the material misrepresentations, Morrow began to attempt modifications, all of which were rejected each time by AVKO, to wit:

a. He asked Mr. McCabe to sign a subscription agreement which required Plaintiff to pay for the stock as an investor, not as the seller of publishing rights, and which was not a part of the negotiations.

b. He later told Mr. McCabe that he needed to sign a subscription agreement in order to receive his shares of stock pursuant to the contract of June 4, 2010.  This is a material fact that should have been disclosed and negotiated and, by being presented at this time, is an attempt at a modification.

c. HSH could have issued treasury shares to Mr. McCabe after the IPO occurred thus the subscription agreement was not necessary.

31. Morrow repudiated the voidable contract within days of signing because he:

a. resigned from HSH and divested his HSH stock making it impossible for him to pay Mr. McCabe the shares.

b. He has intentionally and willfully failed to perform under the contract by failing to pay with cash or negotiable HSH stock worth $250,000 or the second $50,000 cash payment and additional HSH stock worth $250,000. Morrow engaged in dishonesty in fact and knew it when he signed the agreement.

32. . Defendant breached the contract by not paying Plaintiff the first $250,000.00 in stock of Home School Holdings, Inc. on an exchange as required by the agreement tradable.

33. Defendants' breach of the contract was intentional and willful as illustrated by the fact that within two weeks Defendant Morrow sold his 143,000,000 shares of stock to HSH for $1,000.

34. The conduct of Morrow in resigning from HSH and selling his stock was a voluntary affirmative act which rendered him unable to perform the payment of $250,000 of HSH stock and is a repudiation of the contract and is a material impairment of the value of the contract. That it was concealed from Plaintiff is further evidence of additional misconduct and breach.

35. Defendant Morrow's resignation insured that the IPO would fails and he was considered a "key man" and necessary to the operation of the company.

36. When Defendant attempted a second modification, Plaintiff rejected that modification ; but, and urged Defendant Morrow to perform does not change the effect of the repudiation by Morrow and the attendant breach for failure to pay.

37. . As a result of Defendants breach of their express contract signed on June 4, 2010, by repudiation, Plaintiff has suffered damages for

   a.   lost profits,

   b.    loss of the benefit of the bargain,

   c.   loss of market share,

   d.   damages for Morrow's repudiation of the contract,

   e.   damage to AVKO's reputation by Defendants' failure to serve the existing customer base;

   f.   other damages not yet discovered or determined.

## <u>COUNT 3 -INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS</u>

38. The allegations in the preceding and following paragraphs are repeated and incorporated and pleaded herein.

39. Defendants conduct in intentionally misrepresenting that he would pay the stock when he knew he had no intention to pay was outrageous.

40. Defendants conduct of intentionally and willfully violating Plaintiff copyrights in an attempt to steal Plaintiff McCabe″s lifelong literary work was outrageous, more especially since Defendants clearly knew that Plaintiff owned the copyrights.

41. Defendants conduct in creating the allusion that Plaintiff McCabe″s wife, son, and daughter were associated with W3L in the dedication is outrageous.

42. All of the conduct of Defendant Morrow was outrageous and Defendant Morrow knew, or should have known, that the act of violating the copyright, especially after transferring it had been rejected, would cause serious emotional distress in such an elderly man.

43. Defendant Morrow's conduct caused Plaintiff McCabe to suffer severe emotional distress when Morrow berated him on several occasions

    a. when McCabe refused to give him the copyrights without payment,

    b. when McCabe refused to sign a modified contract that was significantly inferior to the voidable contract of 6/4/2010

    c. when Morrow intentionally lodged threats to McCabe through McCabe's grandson Brian and McCabe's Son Robert

44. Such conduct caused grave emotional distress and may have advanced his deteriorating health condition.

45. Wherefore, Plaintiff requests that Defendant compensate Plaintiff for the injury.

## COUNT 5 - INJUNCTION

46.  Plaintiff repeats, incorporates and reallege every paragraph above and below as if fully pleaded herein.

47. There is the likelihood of irreparable harm to Plaintiff if no injunctions issues as the public will believe that W3L is the owner and author of "The Works" and Plaintiff may not be able to correct that misrepresentation.

48. Monetary damages are insufficient therefore, injunction is proper because Defendant has indicated that he unable to pay  if specific performance were to be elected as the remedy for the voidable contract.

49. There is no remedy at law to correct being placed in a false light.

50. The loss of reputation cannot be corrected by monetary damages.

51. The threatened harm to Plaintiff outweighs the harm to Defendant.

52.  Granting the injunction will not harm the public. Not granting the injunction will harm the public.

53. Plaintiff has a substantial likelihood of prevailing.

54. One of the negotiated terms of the voidable contract indicates that publishing shall revert back to AVKO in the event of the breach.  Defendant has acknowledged that he breached the contract.

Wherefore, Plaintiff requests that the Court grant Plaintiff a permanent injunction preventing them from printing, advertising, selling, or otherwise and products, volume, electronic or other media related to or generated from "The Works".

## COUNT 6 – DECLARATORY JUDGMENT

55. Plaintiff repeat and reallege each and every paragraph above and below as if specifically pleaded here.

56. The dispute created by the Defendants repeated violations of the copyright and the issues regarding breach of the contract by Defendants is an actual, substantial and justiciable controversy requiring resolution by the Court.

57. Plaintiff has performed fully under the contract.

58. Defendant Morrow has breached the contract by failing to pay as agreed regarding the first payment.

59. Defendant Morrow has breached the contract by failing to publish all "The Works" as set forth in the contract.

60. Both these breaches are material and trigger the operation of the section wherein all publishing rights revert to AVKO.

61. Plaintiff is entitled to a judgment that confirms the intent of the parties that all publication rights are vested in AVKO and that no one has any rights to publish AVKO materials including, but not limited to "The Works", *How to Teach a Dyslexic* by Donald J McCabe, and other volumes owned by AVKO. Plaintiff seek a further declaration and judgment that the publication rights revert back to them as a result of the operation of the reversion clause of the contract, payment not having been made and that Neither Morrow nor W3L have the right to publish any volumes from "The Works" owned by AVKO.

**Wherefore,** Plaintiff pray for judgment as follows:

a.  A declaration that Plaintiff authorship and ownership of the copyrights to "The Works" belongs to them,

b. A Declaration that Morrow and W3L infringed on Plaintiff copyrights

c. A Declaration that Plaintiff own all right to publish "The Works" and any volume of AVKOs.

d. That the breach of the June 4, 2010 contract triggered the operation of the intent of the parties as found in the express voidable contract of 6/4/2010 clause that returns all publishing rights whatsoever to AVKO AND award attorney's fees and costs.

## DAMAGES

62.    The allegations in the preceding and following paragraphs are repeated and incorporated as though they had set forth herein.

63.    Plaintiff McCabe has been individually injured by the intentional, wanton and malicious conduct of Defendants as set forth above such that had he not been duped by Defendant(s) into entering into the contract of June 4, 2010:

a.  he has lost faith in the honesty of business men, fears getting involved with another entity to fulfill his need to reduce the demands of this business at this time in his life,

b.  has lost the benefit of the earnings that would have been generated

64.    Plaintiff McCabe has been individually emotionally injured by the intentional, wanton and malicious conduct of Defendants as set forth above. And the stress caused by the breach, by the libel and slander of him with former distributors, threats levied directly and indirectly to destroy him and AVKO, causing his health to deteriorate, cardiac issues to

worsen, such health issues that caused or contributed to his accelerated health deterioration and loss of vision.

65.     AVKO has lost income for the time period when it did not compete as a courtesy to Defendants, when it sustained expenses to assist Defendants, when it incurred litigation expense, loss of reputation, loss of goodwill and other damages to be discovered during litigation and discovery.

## JURY DEMAND

66.     Plaintiffs demand a jury to try these issues.

## PRAYER

67.     Wherefore, for the reasons set forth above and all paragraphs incorporated herein,

68.     Plaintiff demand that Plaintiffs be awarded any other just relief the Court an Jury find appropriate in the premises.


Respectfully requested,                                  Dated: 4/6/2012
/s/ Susan Payne Woodrow
Susan Payne Woodrow P29844
*Attorneys for Plaintiff*
Susan Payne Woodrow JD, PC
3631 Dorothy Lane
Waterford, MI 48329
PH: (248) 623-1818
FX: (248) 623-1811
suzywoodrow@hotmail.com