UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

AVKO EDUCATIONAL RESEARCH
FOUNDATION and DONALD J.
MCCABE,

                                          Case Number 11-13381

                        Plaintiffs,               Honorable Thomas L. Ludington

v.

THOMAS A. MORROW and
WAVE 3 LEARNING, INC.,

                        Defendants.

_____/

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANTS' MOTION TO COMPEL, AND DENYING DEFENDANTS' MOTION TO STRIKE**

After a settlement conference on January 15, 2013, the parties represented to the Court that settlement was all but achieved. Settlement and licensing agreements were outlined and agreed to by all parties. But in the days that followed, every element of consensus unraveled.

Written correspondence between counsel, to which the Court was inexplicably included, established that the parties could not conclude the settlement. To one proposed settlement agreement from Defendants, Plaintiffs' counsel, channeling Battle of the Bulge commander General McAuliffe, responded "NUTS." Shockingly, this did not produce amicable resolution.

Settlement thus eluded the parties. As a result, on February 8, 2013, Defendants filed a motion to compel and a motion for summary judgment. Plaintiffs' response to the motion to compel was due on February 22, *see* E.D. Mich. LR 7.1(e)(2)(B), and their response to the

motion for summary judgment was due March 1, *see* E.D. Mich. LR 7.1(e)(1)(B). No timely responses were filed.[1]

Instead, on March 3, 2013, Plaintiff responded to the motion to compel without acknowledging the motion for summary judgment. The next day, Defendants moved to strike that response as untimely. March 5 brought the following from Plaintiffs:

> Plaintiffs' Response to Defendants' Brief Reaponsing [sic] to Plaintiffs' Response tp [sic] Defendants' Motion to Compel Discovery and Request to Deem Requests for Admission Admitted.

In this "reply," (consisting of two pages with five numbered bullets), Plaintiffs assert, without explanation or legal authority, that "[b]oth Motions filed by Defendants should be denied." Pls.' Reply Mot. Strike ¶ 5, ECF No. 95. Then, disregarding the Federal Rules of Civil Procedure and ignoring the fact that Defendants' summary judgment motion remains pending, Plaintiffs request "the court o [sic] accelerate the Trial date to the next available Jury docket as they are prepared to go forward immediately." *Id.* at ¶ 3.

It is into this circumstance that the Court now descends in an attempt to address the issues framed by the pending motions. The Court has reviewed the parties' submissions and finds that the facts and the law have been sufficiently set forth in the motion papers. The Court concludes that oral argument will not aid in the disposition of the motion. Accordingly, it is **ORDERED** that the motion be decided on the papers submitted. *See* E.D. Mich. LR 7.1(f)(2).

Based on what follows, Defendants' motion for summary judgment will be granted, the Court's March 8, 2013 Order to Show Cause will be vacated, the Clerk's entry of default as to Home School Holdings, Inc. will be vacated, Defendants' motion to compel will be denied as untimely, and Defendants' motion to strike will be denied as moot.

---

[1] The Court made clear in an Order dated February 15, 2013 that Plaintiffs' response to Defendants' motion for summary judgment was "due no later than **March 1, 2013**." Feb. 15, 2013 Order 2 (emphasis in original), ECF No. 91.

**I**

**A**

Donald McCabe has dyslexia, and he decided early on that he would help those similarly situated succeed in education. In pursuit of this goal, he created a reading program called Sequential Spelling. Numbering approximately 720 books, the Sequential Spelling program materials include teaching aids, textbooks, teacher's manuals, testing books, and workbooks along with reading, writing, spelling, and grammar aids.

McCabe then founded Plaintiff AVKO Educational Research Foundation, Inc. in 1974 as a non-profit organization. AVKO's primary goal was to provide low-cost reading assistance for dyslexic and other reading impaired individuals. On November 9, 1975, McCabe assigned the Sequential Spelling series to AVKO, and AVKO began publishing and selling materials from the series to provide quality language arts education for students.

Between 1974 and 2012, McCabe served as AVKO's president. Then, in the beginning of 2012, a series of changes took place. McCabe resigned his position as president, and on April 29, 2012 Clifford Schroeder was elected to succeed him. Soon thereafter, Amy Messer replaced Mr. Schroeder. Eventually, for unexplained reasons, McCabe reclaimed the position and once again serves as AVKO's acting president.

During the spring of 2009, McCabe met Defendant Thomas Morrow at a home school conference in Florida. Due to advancing age, McCabe was looking to pass on the responsibility of managing AVKO and its business of publishing, selling, and distributing the learning materials. Because he desired that the program would continue for those in need, McCabe sought a relationship with an entity that would continue to publish and distribute the AVKO works while sharing the proceeds. Morrow was chairman and CEO of Home School Holdings,

Inc. (HSH).  HSH utilized a strategy that relied heavily on acquiring smaller companies within the home-school market and then opening the companies to public investment through an Initial Public Offering (IPO).  A perfect match, McCabe thought.

In May 2009, McCabe contacted Morrow about the possibility of a transaction between AVKO and HSH.  By the fall, representatives from the two companies were negotiating.  They eventually reached agreement, which was codified in a document entitled "Publishing Rights Agreement" (HSH Contract).

Pursuant to the deal, AVKO agreed to assign to HSH the right to publish and sell the AVKO works[2] "anywhere in the world."  HSH Contract 1, *attached as* Defs.' Mot. Ex. G. AVKO further agreed to preclude any other party from publishing the AVKO works within the United States and Canada, and only outside those countries with HSH's permission and proper compensation.  *Id*.  In return, upon closing, HSH was to deliver to AVKO $50,000 and an additional $250,000 in HSH stock certificates, followed by a percentage of any proceeds for the sale of the AVKO works.  *Id*. at 2.  On June 3, 2010, Morrow delivered a cashier's check to AVKO in the amount of $50,000, Defs.' Mot. Ex. H, and sent a Subscription Agreement for the HSH stock to McCabe, Defs.' Mot. Ex. I.  The next day, the HSH Contract was signed by McCabe and Morrow on behalf of AVKO and HSH.  HSH Contract 4.

McCabe, however, refused to sign the Subscription Agreement because he believed the language was inappropriate.  Subsequently, HSH provided McCabe with a new agreement on June 8, 2010, which he also refused to sign.

Morrow then came to believe that he would be unable to establish an IPO through HSH, and he resigned from the company.  After resigning, Morrow offered to continue the publishing

---

[2] Referenced as "The Works" in the parties' agreement, and attached as Exhibit A to that agreement.  *See* Defs.' Mot. Ex. G, at 5–6.

transaction with AVKO through a newly created entity — Defendant Wave 3 Learning, Inc. (W3L). McCabe and AVKO agreed, despite there being no contract between the companies. Instead, they continued to operate as if the terms of the HSH Contract were in effect.

On July 20, 2010, W3L (through Morrow), suggested that the parties replace the stock offer under the HSH Contract with a promissory note. McCabe responded, "Until you can come up with an agreement that my attorney can justify my signing, we had better just maintain the status quo. . . . spend your time and energy into the publishing aspect of Wave3Learning, getting your ISBN's,[3] editing and printing the AVKO materials." Defs.' Mot. Ex. L. As instructed, W3L continued to publish the AVKO works.

On October 9, 2010, McCabe — on behalf of AVKO — executed AVKO's Form 990-EZ, in which he indicated that AVKO had sold the rights in certain copyrighted works to W3L (which included the exclusive rights to publish and sell the works in America and Canada). Shortly thereafter, W3L discovered that an unknown party was cybersquatting[4] upon the "sequentialspelling.com" domain name. Since Morrow believed the HSH Contract was inapplicable, he hired attorneys to draft a replacement copyright and trademark assignment agreement that was intended to provide W3L the standing necessary to recover the "sequentialspelling.com" domain name. McCabe again refused to sign. Thereafter, until June 2011, AVKO paid the invoices issued by W3L and the parties continued to operate as if the terms of the HSH Contract were in effect.

---

[3] "'ISBN' stands for 'International Standard Book Number.' An ISBN is a number, not a bar code. . . . The ISBN identifies the title or other book-like product (such as an audiobook) to which it is assigned, but also the publisher to be contacted for ordering purposes." *See The ISBN Standard*, Bowker ISBN — U.S. Agency, http://www.isbn.org/standards/home/about/index.html (last visited Mar. 29, 2013).

[4] According to the Anticybersquatting Consumer Protection Act, cybersquatting is registering, trafficking in, or using a domain name with bad faith intent to profit from the goodwill of a trademark belonging to someone else. *See Solid Host, NL v. Namecheap, Inc.*, 652 F. Supp. 2d 1092, 1099 (C.D. Cal. 2009).

However, on June 6, 2011, AVKO's attorney sent a demand letter to W3L, which claimed that Morrow, W3L, and/or HSH had infringed upon AVKO's copyrighted material and had failed to pay AVKO as originally agreed.

On July 27, 2011, Plaintiffs filed suit against Defendants Morrow, W3L, HSH, and Home School, Inc. (HSI) in Saginaw County Circuit Court, State of Michigan.  The case was then removed to this Court in August 2011 pursuant to diversity jurisdiction.  In their complaint, Plaintiffs assert five causes of action that remain: (1) copyright infringement; (2) breach of contract; (3) fraud and misrepresentation in the inducement; (4) intentional infliction of emotional distress; and (5) declaratory judgment.[5]

**B**

On September 22, 2011, Morrow and W3L (but not HSH or HSI) answered Plaintiffs' complaint, and filed a counterclaim of their own.  Then on October 26, 2011, Morrow and W3L, with leave of the Court, filed an amended answer and an amended counterclaim.  Morrow and W3L's amended counterclaim alleges claims for fraud in the inducement (Count I), breach of contract/implied warranty of title (Count II), unjust enrichment (Count III), defamation (Count IV), defamation per se (Count V), tortious interference with a business relationship or expectancy (Count VI), and promissory estoppel (Count VII).  *See* Defs.' Am. Countercl. ¶¶ 63–118, ECF No. 25.  Plaintiffs answered the amended counterclaim on December 2, 2012.

In January 2012, Plaintiffs filed a motion to amend their complaint.  Later, on April 6, 2012, Plaintiffs filed an amended motion to amend their complaint.  To each motion, Plaintiffs

---

[5] Count V of Plaintiffs' amended complaint sought an injunction.  On October 5, 2011, Plaintiffs filed a motion for a preliminary injunction and for a temporary restraining order.  ECF No. 12.  Plaintiffs requested that the Court enter a preliminary injunction to enjoin Defendants from publishing, advertising, distributing, or selling any of the AVKO works.  The motion was set for hearing, which was eventually held in March 2012.  During the hearing, the Court advised Plaintiffs that the posting of a $75,000 bond was necessary before the Court would grant a preliminary injunction.  This would protect and compensate Defendants' interests should Plaintiffs' claims prove meritless.  However, Plaintiffs were unable to secure such a bond, and the motion for a preliminary injunction and temporary restraining order was denied.  *See* March 27, 2012 Order, ECF No. 69.

attached a copy of the amended complaint they wished to file.  Importantly, the complaint attached to the first motion named HSH and HSI as Defendants, while the complaint attached to the second, amended motion did not.  The Court granted the first motion and denied the second as moot, but accepted "as filed" the complaint attached to the second motion.  *See* May 4, 2012 Order 1, ECF No. 73.  Accordingly, at this point, only Morrow and W3L are named as Defendants in Plaintiffs' pleadings.  *See* Pls.' Am. Compl. 1, ECF No. 70.

Morrow and W3L answered Plaintiffs' amended complaint on May 18, 2012, but did not re-file their counterclaim.  Instead, Morrow and W3L requested, as a part of their prayer, "the relief requested in their counterclaim *to be filed* in this action."  Defs.' Answer 7, ECF No. 75 (emphasis added).  Despite this language, Morrow and W3L never re-filed the counterclaim.

Now before the Court are three motions on behalf of Morrow and W3L: a motion for summary judgment, a motion to compel discovery, and a motion to strike Plaintiffs' response to the motion to compel.

## II

Summary judgment is proper when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The focus must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52 (1986).  All justifiable inferences from the evidence are drawn in the non-moving party's favor.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Summary judgment is proper where a plaintiff fails to produce evidence creating a genuine issue of material fact as to any of the essential elements of its prima facie case.

*Dietelbach v. Ohio Edison Co.*, 1 F. App'x 435, 437 (6th Cir. 2001) (citing *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995)).

### III

### A

Acknowledged above, these proceedings have taken a turn towards the chaotic. But before the pending motions can be considered, HSH's and HSI's status as Defendants in the case must first be addressed.

In Plaintiffs' original complaint, they named HSH and HSI as Defendants. Then, on January 5, 2012, Plaintiffs filed a motion to amend/correct their complaint. *See* Pls.' Mot. to Amend/Correct, ECF No. 43. Attached as an exhibit to that motion was a "First Amended Verified Complaint." Pls.' Mot. to Amend/Correct Ex. 2. HSH and HSI were named as Defendants in that amended complaint as well.

However, on April 6, 2012, Plaintiffs filed an amended motion to amend/correct. *See* Pls.' Am. Mot. to Amend/Correct, ECF No. 70. This motion began with Plaintiff's "First Amended Complaint," comprising the first 23 pages of the filing. Notably, this First Amended Complaint only lists Morrow and W3L as Defendants. *Id.* at 1.[6] On May 4, 2012, this Court granted Plaintiffs' first motion to amend/correct their complaint (not the amended motion to amend/correct), but made clear, "Plaintiff's amended complaint (ECF No. 70) is accepted as filed." May 4, 2012 Order 1. Accordingly, Plaintiffs' only complaint is the First Amended Complaint attached to their amended motion to amend/correct — which does not name HSH or HSI as Defendants.

---

[6] Notably, McCabe remains a Plaintiff in the action. One might ask, "Why?" McCabe acknowledged he fully transferred his rights in the AVKO works to AVKO, undermining his standing to bring any claims arising from transactions between AVKO and other companies.

But by September 2012, confusion reigned as to whether the parties remained in the case. After much discussion, and based upon the Court's understanding of Plaintiffs' intention, the Court directed the parties to submit a stipulation to dismiss HSH and HSI. *See* E-mail from Andrew Crowder, Law Clerk to Hon. Ludington, to counsel (Sep. 25, 2012, 13:35 EST), *attached as* Defs.' Reply Mot. Show Cause Ex. 1, ECF No. 98 ("Counsel, I spoke with Judge Ludington about your concerns. We would appreciate a stipulated order . . . to dismiss Defendants Home School Holdings, Inc. and Home School, Inc. from the case."). Plaintiffs' counsel responded, "I have no problem signing such a stipulation." E-mail from Susan Woodrow, Plaintiffs' counsel, to Court (Sep. 25, 2012, 16:16 EST), *attached as* Defs.' Reply Mot. Show Cause Ex. 2. Regrettably, no such stipulation was ever submitted.

Overlooking the fact that neither party was identified in the complaint, on March 8, 2013 the Court ordered Plaintiffs to show cause why HSH and HSI should not be dismissed. The order established that since Plaintiffs filed their original complaint, "there has been no action taken by anyone on behalf of or against either [HSH] or [HSI]." Mar. 8, 2013 Order 1, ECF No. 96.

Plaintiffs responded to the show cause order and conceded, "Home School, Inc. should be dismissed." Pls.' Resp. 3, ECF No. 97. Plaintiffs now maintain, however, that HSH should remain. Of course, such an argument carries little significance given the fact that Plaintiffs themselves filed an amended complaint which removed HSH as a Defendant.

Nevertheless, on March 25, 2013, Plaintiffs moved for default judgment against HSH, alleging that HSH was served with the complaint but "informed counsel for Plaintiff that they are choosing not to defend." Pls.' Mot. Default J. 1, ECF No. 100. Accepting counsel's suggestion, the Clerk's Office entered default judgment against HSH that same day.

But this was all in error.  The Court should not have issued the order to show cause; HSH and HSI are not named in Plaintiffs' amended complaint.  The show cause order will thus be vacated.  Further, there is no basis for an entry of default judgment against HSH for the same reason — HSH is not a named Defendant in this case.  Accordingly, the Clerk's entry of default judgment as to HSH, ECF No. 101, will also be vacated.

Plaintiffs' suggestion — that HSH is still a Defendant — will be disregarded.  Plaintiffs removed the party from their own amended complaint, and then agreed to dismiss them via written correspondence.

## B

Turning now to Morrow and W3L's motion for summary judgment.  When faced with a plaintiff's failure to respond to a motion for summary judgment, the court may still consider the motion, but is required, at a minimum, to ensure that the movant has met its burden under Rule 56(c) of establishing the absence of any genuine issue of material fact.  *Schenkenfelder v. Blitz, U.S.A. Inc.*, No. 06-452, 2009 WL 2496460, at *2 (E.D. Tenn. Aug. 12, 2009) (citing *Miller v. Shore Fin. Servs., Inc.*, 141 F. App'x 417, 419 (6th Cir. 2005) (unpublished)); *see also Carver v. Bunch*, 946 F.2d 451, 454–55 (6th Cir. 1991).  In this case, Plaintiffs have failed to respond, unless the one line in their "reply" brief ("Both Motions filed by Defendants should be denied," Pls.' Reply Mot. Strike ¶ 5) constitutes such a reply.

Regardless, Defendants have met their burden of establishing there exists no genuine issue of material fact regarding Plaintiffs' claims.  Plaintiffs' feeble attempt to dispute Defendants' motion, even if credited, is insufficient to do so, and Defendants' motion will be granted.

**1**

Plaintiffs first allege that Morrow and W3L infringed upon AVKO's copyrighted materials by publishing the AVKO works without a license and by failing to attribute AVKO as the author. *See* Pls.' Am. Compl. ¶ 19 (a)–(g). However imaginative, Plaintiffs' arguments are incorrect.

The Copyright Act provides that the owner of a copyright has the exclusive rights to authorize, among other things, others to reproduce and sell the copyrighted work. 17 U.S.C. 106. It is well-established that a non-exclusive license to reproduce and sell copyrighted material is not a transfer of copyright ownership, "and is not, therefore, subject to the writing requirement of § 204." *Id*. (citing *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 558 (9th Cir. 1990); 17 U.S.C. § 101). Thus, a non-exclusive license to publish copyrighted material "may be granted orally, or may be implied from conduct." *Johnson v. Jones*, 149 F.3d 494, 500 (6th Cir. 1998) (citing M. Nimmer & D. Nimmer, *3 Nimmer on Copyright* § 10.03[A], at 10–38 (1994)).

Where a copyright dispute turns on whether an author has provided a license to another, "the burden is on the alleged infringer to prove the existence of the license." *Tasini v. New York Times Co., Inc.*, 205 F.3d 161, 171 (2d Cir. 2000). Such an alleged infringer must demonstrate it was "*intended* . . . to have a license to use the copyrighted material." *Johnson*, 149 F.3d at 502 (emphasis in original). "Courts have held that the existence of an implied license to use the copyright for a particular purpose precludes a finding of infringement." *Id*. at 500.

In this particular instance, there is no need for an exhaustive search to discover evidence that AVKO granted W3L and Morrow a license to reproduce and distribute the AVKO works. In July 2010, McCabe wrote the following to Morrow, "spend your time and energy into the publishing aspect of Wave3Learning, getting your ISBN's, editing and printing the AVKO

materials."  Defs.' Mot. Ex. L.  Further, while executing AVKO's 990-EZ form on October 9, 2010, McCabe explicitly represented that AVKO had "sold the non-exclusive publishing rights of the AVKO materials to Wave3Learning, Inc. for $50,000."  Defs.' Mot. Ex. M, at 5. Plaintiffs' claim that Morrow and W3L did not have a license to publish the AVKO materials is thus directly contradicted by McCabe himself.

Plaintiffs' other claim for copyright infringement involves Morrow and W3L's failure to properly attribute the AVKO works to AVKO.  Even if true, this is not grounds for copyright infringement.

Specifically, "[a] copyright owner who grants a nonexclusive license to use his copyrighted material waives his right to sue the licensee for copyright infringement."  *Graham v. James*, 144 F.3d 229, 236 (2d Cir. 1998); *see also Johnson*, 149 F.3d at 500.  Moreover, the failure to credit the author with the copyright does not "amount to copyright infringement." *Graham*, 144 F.3d at 236.  As established by Nimmer,

> The generally prevailing view in this country under copyright law has been that an author who sells or licenses her work does not have an inherent right to be credited as author of the work.  In line with that general rule, it has been held not to infringe an author's copyright for one who is licensed to reproduce the work to omit the author's name.

*3 Nimmer on Copyright* § 8D.039[A][1], at 8D–32 (citations omitted); *see also* Jane C. Ginsburg, *II. Art and the Law: Suppression and Liberty Have Moral Rights Come of (Digital) Age in the United States?*, 19 Cardozo Arts & Ent. L.J. 9, 13 (2001) ("misidentifying the author of a copyrighted work violates some legal norms in the United States, but it is not copyright infringement. . . . it is not copyright infringement even willfully to miscredit the author").  It follows that Plaintiffs' claims for copyright infringement are without merit.

**2**

Plaintiffs' second claim is against Morrow for fraud and misrepresentation in the inducement. Plaintiffs assert that during contract negotiations, Morrow made "material assertions of misrepresentation and the material concealment of facts." Pls.' Am. Compl. ¶ 25. Plaintiffs allege that AVKO relied upon these misrepresentations, and were harmed as a result.

**a**

This Court has jurisdiction over the subject matter of this dispute pursuant to diversity jurisdiction. *See id.* at 2; 28 U.S.C. § 1332. As has long been established, "[e]xcept in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state." *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Accordingly, "federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 416 (1996). Further, courts must apply the substantive law of the state in which the court sits. *See Mill's Pride, Inc. v. Continental Ins. Co.*, 300 F.3d 701, 704 (6th Cir. 2002). Here, that state is Michigan.

**b**

That settled, Plaintiffs' fraud and misrepresentation in the inducement claim against Morrow is to be addressed. According to Michigan courts:

> To establish a cause of action for fraud or misrepresentation, a plaintiff must prove (1) that the defendant made a material representation, (2) that the representation was false, (3) that when the defendant made the representation, the defendant knew that it was false, or made it recklessly without knowledge of its truth or falsity, (4) that the defendant made it with the intent that the plaintiff would act on it, (5) that the plaintiff acted in reliance on it, and (6) that the plaintiff suffered injury. *Baker v. Arbor Drugs, Inc.*, 544 N.W.2d 727, 732 (Mich. Ct. App. 1996). An action for fraudulent misrepresentation must be predicated on a statement relating to a past or an existing fact. *Id.* Future promises are contractual and cannot constitute actionable fraud. *Id.*

*Gage Prods. Co. v. Henkel Corp.*, 393 F.3d 629, 645 (6th Cir. 2004) (quoting *Eardmans v. Maki*, 573 N.W.2d 329, 332–33 (Mich. Ct. App. 1997)).  Even if the representations are found to be promises of future action, however, they nevertheless are actionable if they were "made in bad faith without intention of performance."  *Gage Prods.*, 393 F.3d at 645 (quoting *Hi-Way Motor Co. v. Int'l Harvester Co.*, 247 N.W.2d 813, 816 (Mich. 1976)).

Although Defendants' Rule 56 motion is being addressed, Plaintiffs have not responded in any way.[7]  Accordingly, the Court only has the benefit of Plaintiffs' amended complaint to assess their claims.  Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement showing that the pleader is entitled to relief."  To survive a motion to dismiss (which presents a lower bar than a motion for summary judgment), a complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (internal quotation marks omitted)).  A claim is plausible when the plaintiff pleads factual content sufficient to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Iqbal*, 556 U.S. at 678.

Plaintiffs' amended complaint falls short of these pleading requirements, much less the standard to survive summary judgment.  Although they allege numerous misrepresentations by Morrow, many of which relate to past or existing facts, Plaintiffs have not identified any evidence that the representations were false.  Further, Plaintiffs have not shown that Morrow knew any of the representations were false when he made them, or that he acted recklessly without knowledge of their truth or falsity.  Finally, Plaintiffs have not demonstrated that Morrow made any of these alleged misrepresentations with the intent that Plaintiffs would act

---

[7] Noted above, the Court made every effort to ensure Plaintiffs were aware any response was due on March 1, 2013.

upon them.  (For example, Plaintiffs allege that Morrow claimed to be "the Michael Jordan of Army Reconnaissance," Pls.' Am. Compl. ¶ 24(a), but fail to indicate how that could have induced Plaintiffs to enter the HSH Contract.)  Defendants are entitled to summary judgment on this claim because Plaintiffs have not satisfied their *prima facie* burden.

### 3

Plaintiffs' claim for breach of contract will also be assessed under Michigan law, and upon review, is also without merit.

In Michigan, the essential elements of a valid contract are "(1) parties competent to contract, (2) a proper subject matter, (3) a legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *Thomas v. Leja*, 468 N.W.2d 58, 60 (Mich. Ct. App. 1991) (citing *Detroit Trust Co. v. Struggles*, 286 N.W. 844 (Mich. 1939)).  A plaintiff must also establish a breach of the contract and damages resulting from the breach.  *Alan Custom Homes, Inc. v. Krol*, 667 N.W.2d 379, 383 (Mich. Ct. App. 2003).

Plaintiffs' breach of contract claim is directed specifically at Morrow.  *See* Pls.' Am. Compl. ¶¶ 29–37.  But Morrow was not a party to the HSH Contract.  Indeed, the HSH Contract established that Morrow signed "For Home School Holdings, Inc."  HSH Contract 4.  As HSH is not a party to the case, Plaintiffs' breach of contract claim must be dismissed.[8]

That is, unless there is some basis for piercing HSH's corporate veil to reach Morrow, who at the time of HSH Contract formation was a primary stockholder.  Generally, "[t]he law treats a corporation as an entirely separate entity from its shareholders, even where one

---

[8] Although not an argument made by Plaintiffs, as they made no arguments concerning Defendants' motion for summary judgment, any oral contract between Plaintiffs and Defendants would fail for lack of consideration. This is because when Morrow offered to continue the HSH deal through W3L, and Plaintiffs accepted, there were no payments of any kind from W3L or Morrow to Plaintiffs, and past consideration will not support a new agreement. *See Turrabi v. Ronald Terolli & Marter Furniture, Inc.*, No. 284465, 2009 WL 1508936, at *1 (Mich. Ct. App. May 26, 2009) (per curiam) ("A past consideration does not constitute a legal consideration for a subsequent agreement.") (citation omitted).

individual owns all the corporation's stock." *Rymal v. Baergen*, 686 N.W.2d 241, 252 (Mich. Ct. App. 2004).   For the corporate veil to be pierced, "the corporate entity must be a mere instrumentality of another individual or entity." *Id*.  Moreover, "the corporate entity must have been used to commit a wrong or fraud.  Additionally, and finally, there must have been an unjust injury or loss to the plaintiff." *Id*. (citations omitted).

Plaintiffs' response to the motion to show cause dispels any possibility of piercing the corporate veil here.  "Plaintiffs have continually communicated with the principals of [HSH] and believe that they are a corporation that has no assets."  Pls.' Resp. 1.  "It is our understanding that HSH will be present at the trial in this matter and [will] bring valuable information.  This evidence, including the testimony of several of the principals, will be necessary for the case to be tried." *Id*. at 1–2.

With these words, Plaintiffs establish that HSH was not merely the instrumentality of Morrow.  Instead, Plaintiffs have demonstrated that despite Morrow resigning from HSH in 2009, and selling all of his stock, the corporation remains intact with multiple principal officers to this day.  Where Plaintiffs consistently treat HSH as a separate entity from Morrow, so too will this Court. *See Florence Cement Co. v. Vettraino*, 807 N.W.2d 917, 923 (Mich. Ct. App. 2011).

**4**

Plaintiffs' fourth claim is for intentional infliction of emotional distress, another tort claim that will be analyzed under Michigan law.  As with the previous claims, Morrow and W3L are entitled to summary judgment.

The Michigan Supreme Court has established four necessary elements for a *prima facie* case of intentional infliction of emotional distress: (1) extreme and outrageous conduct; (2) intent

or recklessness; (3) causation; and (4) severe emotional distress.  *Roberts v. Auto-Owners Ins. Co.*, 374 N.W.2d 905, 908 (Mich. 1985).  Even if Plaintiffs could make out the other three elements — a point far from dispute — they have produced absolutely no evidence of severe emotional distress to satisfy the fourth.

> Michigan courts have explained the emotional distress requirement as follows:

> The rule . . . applies only where the emotional distress has in fact resulted, and where it is severe.  Emotional distress passes under various names, such as mental suffering, mental anguish, mental or nervous shock, or the like.  It includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea.  *It is only where it is extreme that the liability arises.*  Complete emotional tranquillity [sic] is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people.  *The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it.*

*Id.* at 911 (emphasis in original) (quoting Restatement (First) Torts, 2d, § 46, comment j, p. 77).

Plaintiffs have not satisfied this requirement.  They assert that "Defendant[']s conduct in intentionally misrepresenting that he would pay the stock when he knew he had no intention to pay was outrageous."  Pls.' Am. Compl. ¶ 39.  Established above, Morrow was operating on behalf of HSH when he negotiated and signed the contract, not in his own individual capacity.  Further, the evidence indicates that Morrow attempted to provide McCabe with stock subscriptions, but that McCabe simply refused to sign them.  This is not severely-outrageous conduct that no reasonable man could be expected to endure; it's business.

Finally, Plaintiffs' argue that Morrow's conduct "caused grave emotional distress and may have advanced [McCabe's] deteriorating health condition."  Pls.' Am. Compl. ¶ 44.  This claim is not supported by any evidence.  Plaintiffs offer nothing to demonstrate McCabe's "grief, depression, disruption of life style, or of treatment for anxiety or depression."  *Roberts*, 374

N.W.2d at 912.  Without similar evidence, the distress demonstrated by Plaintiffs is, "as a matter of law, insufficient to support this cause of action."  *Id.*  McCabe's reaction is "more consistent with that which normally accompanies the breach of a contractual obligation," *id*., not intentional infliction of emotional distress.

**5**

Plaintiffs' final remaining claim seeks declaratory judgment.  Plaintiffs allege that Defendants' "breaches are material and trigger the operation of the section wherein all publishing rights revert to AVKO."  Pls.' Am. Compl. ¶ 60.  But Plaintiffs are incorrect.  Each of their substantive claims reviewed herein have proved to be without merit.  As a result, there are no actionable breaches to support the action they request.  HSH, who was a party to the contract, is not a party to the litigation.  And, neither Morrow nor W3L are parties to the HSH Contract (which, of course, was between HSH and AVKO).  Plaintiffs' belief "that the publication rights revert back to them" as a result of the operation of the reversion clause in the contract between AVKO and nonparty HSH is simply misguided.  Because all of Plaintiffs' substantive claims are without merit, declaratory judgment is not appropriate.

**IV**

There remain loose ends requiring attention.  Namely, Morrow and W3L's counterclaim, their motion to compel, and their motion to strike Plaintiffs' response to their motion to compel.

Although Morrow and W3L did not re-file their counterclaim along with their answer to Plaintiffs' amended complaint, this is not reason to dismiss their counterclaim.  *See Hitachi Med. Sys. Am., Inc. v. Horizon Med. Group*, No. 5:07-CV-02035, 2008 WL 5723531, at *4–*5 (N.D. Ohio Aug. 29, 2008) (defendant that did not re-file counterclaim along with answer to amended

complaint was nevertheless permitted to maintain its counterclaim).   The Court therefore concludes that Morrow and W3L's counterclaim remains pending.

Thus, this case is not at an end, and Defendants' other two motions must be addressed. On February 8, 2013, Defendants filed a motion to compel discovery and to deem requests for admission admitted.   Defendants argue that "Plaintiff has entirely failed to respond to Defendants' Second Requests for Production of Documents despite Defendants' repeated requests for these responses."   Defs.' Mot. Compel 4, ECF No. 88.   Defendants proceed, "Plaintiff has also failed to timely respond to Defendants' Second Requests for Admission. Additionally, in response to Defendants' Third Request for Production of Documents, Plaintiff has provided objections to Requests for Production No. 3, 4, 5, and 6."   *Id.* at 4–5.   Defendants conclude that the information they seek is relevant, and that Plaintiffs be compelled to produce it. Plaintiffs responded to the motion to compel on March 3, 2013, and the next day Defendants moved to strike the response as untimely.

Interestingly enough, the Court's case management and scheduling order, dated December 12, 2012, established that the discovery cutoff date was January 25, 2013.   Dec. 12, 2012 Order 1, ECF No. 83.   Thus, Defendants' motion to compel, like Plaintiffs' response, is untimely.

"A district court enjoys broad discretion in managing discovery." *Suntrust Bank v. Blue Water Fiber, L.P.*, 210 F.R.D. 196, 199 (E.D. Mich. 2002) (citing *Ghandi v. Police Dep't City of Detroit*, 747 F.2d 338, 354 (6th Cir. 1984)).   Thus, whether to grant a motion to compel discovery lies within the district court's discretion. *Suntrust Bank*, 210 F.R.D. at 199 (quoting *Lavado v. Keohane*, 992 F.2d 601, 604 (6th Cir. 1993)).   "A district court may properly deny a motion to compel discovery where the motion to compel was filed after the close of discovery."

*Suntrust Bank*, 210 F.R.D. at 199 (citing *Willis v. New World Van Lines, Inc.*, 123 F. Supp. 2d 380, 401 (E.D. Mich. 2000)).

There is no argument to be made that Defendants' motion to compel is timely, and it will be denied on that basis. Thus, Defendants' motion to strike Plaintiffs' response to the motion will be denied as moot.

**V**

Accordingly, it is **ORDERED** that as of May 4, 2012, the date Plaintiffs' amended complaint was accepted as filed, Home School Holdings, Inc. and Home School, Inc. were no longer defendants in this action.

It is further **ORDERED** that the Court's order to show cause, ECF No. 96, is **VACATED**.

It is further **ORDERED** that the Clerk's entry of default as to Home School Holdings, Inc., ECF No. 101, is **VACATED**.

It is further **ORDERED** that Defendants' motion for summary judgment, ECF No. 92, is **GRANTED**.

It is further **ORDERED** that Plaintiffs' amended complaint, ECF No. 70, is **DISMISSED** with prejudice.

It is further **ORDERED** that Defendants' motion to compel, ECF No. 88, is **DENIED** as untimely.

It is further **ORDERED** that Defendants' motion to strike, ECF No. 94, is **DENIED** as moot.

Dated: April 5, 2013                              s/Thomas L. Ludington
                                                  THOMAS L. LUDINGTON
                                                  United States District Judge

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 5, 2013.

s/Tracy A. Jacobs
TRACY A. JACOBS